821 So.2d 937 (2001)
Garfield W. IVEY
v.
STATE of Alabama.
1001412.
Supreme Court of Alabama.
July 6, 2001.
*938 Albert C. Bowen, Jr., of Beddow, Erban & Bowen, P.A., Birmingham; and Barry A. Ragsdale of Ivey & Ragsdale, Birmingham, for appellant.
Bill Pryor, atty. gen., and Joseph G.L. Marston III, asst. atty. gen., for appellee.
Gregg P. Leslie, Lucy Dalglish, and Daniel R. Bischof, Arlington, Virginia; and Gilbert E. Johnston, Jr., of Johnston, Barton, Proctor & Powell, L.L.P., Birmingham, for amicus curiae Reporters Committee for Freedom of the Press.

On Transfer from the Court of Criminal Appeals
LYONS, Justice.
Garfield W. Ivey was convicted of criminal defamation, a violation of § 13A-11-163, Ala.Code 1975, and tampering with a witness, a violation of § 13A-10-124, Ala. Code 1975. On each count, he was sentenced to a term of six months' imprisonment and was fined $500. The trial judge directed that the sentences run concurrently, but stated that Ivey would serve only 30 days of that sentence in jail. Ivey appealed to the Court of Criminal Appeals. The judges of the Court of Criminal Appeals recused themselves, and the case was transferred to this Court. We conclude that the trial court erred in denying Ivey's motions for a judgment of acquittal on the charge of criminal defamation and on the charge of tampering with a witness. As to both charges, we reverse the judgment *939 of conviction and render a judgment of acquittal. Our decision in this case is based entirely on a holding that the criminal-defamation statute does not comply with the United States Constitution and on the right of a defendant, under the Alabama Constitution of 1901, to a trial in the county where the offense was committed. Because of this disposition, this opinion cannot and should not be viewed as vindication of Ivey's version of the evidence.
On September 11, 1998, Melissa Myers commenced a civil action in the Mobile Circuit Court, alleging that Steve Windom, a state senator and nominee of the Republican Party for the office of Lieutenant Governor, had "solicited and engaged the services of [Myers] for the purposes of obtaining sex and sexual services in exchange for money" and that Windom had "violently and physically abused, attacked, struck, slapped, physically restrained and injured [Myers] against her will." The complaint also included allegations of rape, forcible sodomy, and sexual assault and battery. Myers requested compensatory and punitive damages of an unspecified amount.
A press release that contained information about Myers's lawsuit against Windom was released to the media. A videotape of Myers's statement regarding the allegations of her lawsuit was given to Jodi Brooks of a Mobile television station. Portions of the videotape were televised by the Mobile television station on September 15, 1998, during its nightly news broadcast. In response, Windom held a press conference denying Myers's allegations; in that press conference he stated that Myers had been paid by the Alabama Trial Lawyers' Association ("ATLA") and Ivey to fabricate the story on which the complaint was based. On that same day, Myers appeared in the Mobile County Circuit Court for a probation-revocation hearing on a prior conviction and was immediately jailed. Attorney General Bill Pryor appointed a special prosecutor, Tommy Chapman, in November 1998, to investigate the circumstances surrounding Myers's lawsuit. Later that month, Myers, who was still in jail on a probation violation, recanted her allegations against Windom and was immediately released from jail.
Chapman presented the case to the Mobile County grand jury, and in August 1999 the grand jury returned an indictment charging Ivey and Wes Chappell, an investigator Ivey had hired to research Myers's allegations, with bribery of a witness, conspiracy to bribe a witness, tampering with a witness, and criminal defamation. All of the circuit judges in Mobile County recused themselves, except Judge Edward McDermott, who was appointed to preside over the case. However, the State filed a motion asking Judge McDermott to recuse; he then recused himself from the case. Judge Charles Partin of Baldwin County was appointed to preside over the case.
Ivey moved to dismiss the charge of criminal defamation, alleging that Alabama's criminal-defamation statute, § 13A-11-163, Ala.Code 1975, was unconstitutional. Ivey also moved to dismiss the entire indictment on the basis of prosecutorial misconduct. He alleged that Chapman had told the attorneys for ATLA that the criminal prosecution could be avoided if a civil action Windom had initiated, seeking damages from the ATLA in the amount of $500,000, was settled. The trial court denied Ivey's motion to dismiss the criminal-defamation charge and his motion to dismiss the entire indictment for prosecutorial misconduct.
A jury trial commenced on the charges against Ivey and Chappell. At the close of the State's evidence, Ivey moved for a *940 judgment of acquittal, arguing that as to all counts the evidence was insufficient; that the State had failed to produce evidence indicating that Mobile County was the proper venue for the trial of the charge of tampering with a witness; and that § 13A-11-163 was unconstitutional. The trial court denied the motion. However, the court ruled that Myers's civil complaint against Windom and the press release that was distributed to the news media were subject to the absolute privilege accorded matters involved in a judicial proceeding and that this evidence could not be used as a basis for the criminal-defamation count. Thus, the only evidence remaining to be used as a basis for the criminal-defamation count was the videotape of Myers's statement. Additionally, the trial court dismissed the charge of conspiracy to commit bribery.
Ivey renewed his motion for a judgment of acquittal, at the close of the presentation of his case. The court denied that motion and submitted the case to the jury. As to the defendant Chappell, the jury returned a verdict of not guilty with respect to all of the charges against him. As to Ivey, the jury returned a not-guilty verdict as to the charge of bribery of a witness, but on the charges of tampering with a witness and criminal defamation it returned a verdict of guilty. The trial court entered a judgment on the verdict. Ivey filed a renewed motion for a judgment of acquittal, which the trial court denied. Ivey filed a motion for a new trial, which the trial court denied. Ivey appealed.
Ivey argues (1) that Alabama's criminal-defamation statute, § 13A-11-163, Ala. Code 1975, is unconstitutional; (2) that the State failed to produce sufficient evidence on the charges of witness tampering and criminal defamation; (3) that the State failed to prove that Mobile County was the proper venue for the charge of witness tampering; (4) that the trial court erred in denying Ivey's motion for a new trial; and (5) that the indictment against Ivey should have been dismissed because of prosecutorial misconduct.

I. Constitutionality of Alabama's Criminal-Defamation Statute, § 13A-11-163, Ala.Code 1975
Ivey argues that Alabama's criminal-defamation statute is unconstitutional because, he argues, it does not comport with the law of defamation adopted by the United States Supreme Court in Garrison v. Louisiana, 379 U.S. 64, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964). Ivey contends that § 13A-11-163 fails to require a showing of "actual malice" when the alleged victim is a public official or public figure. Ivey claims that because this statute is unconstitutional, his conviction should be reversed. The State argues, however, that § 13A-11-163 is not unconstitutional and that Ivey's speech is not within the bounds of the First Amendment.[1]
*941 Section 13A-11-163, Ala.Code 1975, reads:
"Any person who writes, prints or speaks of and concerning any woman, falsely imputing to her a want of chastity; and any person who speaks, writes or prints of and concerning another any accusation falsely and maliciously importing the commission by such person of a felony or any other indictable offense involving moral turpitude shall, on conviction, be punished by fine not exceeding $500.00 and imprisonment in the county jail, or sentenced to hard labor for the county, not exceeding six months, one or both, at the discretion of the jury."
In Garrison v. Louisiana, supra, the United States Supreme Court held that the requirement of New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964)that a defamation action based on the alleged defamation of a public figure requires a showing of "actual malice" (as defined in New York Times) also applies to a prosecution for criminal defamation. In Garrison, a Louisiana district attorney made statements during a press conference concerning a refusal by the judges of the criminal district court to approve funds that would allow the district attorney's staff to investigate commercial vice. In those statements, the district attorney attributed the large backlog of pending criminal cases to laziness on the part of the judges and to the judges' taking excessive vacations. The district attorney was charged under Louisiana's criminal-defamation statute and was convicted. In reversing the Louisiana Supreme Court's judgment upholding the conviction, the Supreme Court stated:
"We held in New York Times that a public official might be allowed the civil remedy only if he establishes that the utterance was false and that it was made with knowledge of its falsity or in reckless disregard of whether it was false or true. The reasons which led us so to hold ... apply with no less force merely because the remedy is criminal. The constitutional guarantees of freedom of expression compel application of the same standard to the criminal remedy. Truth may not be the subject of either civil or criminal sanctions where discussion of public affairs is concerned. And since `... erroneous statement is inevitable in free debate, and ... it must be protected if the freedoms of expression are to have the "breathing space" that they "need ... to survive" ...,' only those false statements made with the high degree of awareness of their probable falsity demanded by New York Times may be the subject of either civil or criminal sanctions. For speech concerning public affairs is more than self-expression; it is the essence of self-government. The First and Fourteenth Amendments embody our `profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials.'"
379 U.S. at 74-75, 85 S.Ct. 209 (emphasis added) (citations omitted).
The Supreme Court concluded that because the Louisiana statute failed to include the "actual-malice" requirement when the alleged victim was a public official, the statute was unconstitutional. The Court stated:
"Applying the principles of the New York Times case, we hold that the Louisiana *942 statute, as authoritatively interpreted by the Supreme Court of Louisiana, incorporates constitutionally invalid standards in the context of criticism of the official conduct of public officials. For, contrary to the New York Times rule, which absolutely prohibits punishment of truthful criticism, the statute directs punishment for true statement made with `actual malice.' And `actual malice' is defined in the decisions below [in Louisiana] to mean `hatred, ill will or enmity or a wanton desire to injure....' The statute is also unconstitutional as interpreted to cover false statements against public officials. The New York Times standard forbids the punishment of false statements, unless made with knowledge of their falsity or in reckless disregard of whether they are true or false. But the Louisiana statute punishes false statements without regard to that test if made with ill-will; even if ill-will is not established, a false statement concerning public officials can be punished if not made in the reasonable belief of its truth. The Louisiana Supreme Court affirmed the conviction solely on the ground that the evidence sufficed to support the trial court's finding of ill-will, enmity, or a wanton desire to injure. But the trial court also rested the conviction on additional findings that the statement was false and not made in the reasonable belief of its truth....
"[The opinion below] is not a holding applying the New York Times test. The reasonable-belief standard applied by the trial judge is not the same as the reckless-disregard-of-truth standard. According to the trial court's opinion, a reasonable belief is one which `an ordinarily prudent man might be able to assign a just and fair reason for'; the suggestion is that under this test the immunity from criminal responsibility in the absence of ill-will disappears on proof that the exercise of ordinary care would have revealed that the statement was false. The test which we laid down in New York Times is not keyed to ordinary care; defeasance of the privilege is conditioned, not on mere negligence, but on reckless disregard for the truth."
379 U.S. at 77-79, 85 S.Ct. 209 (emphasis added) (citations omitted); see also Ashton v. Kentucky, 384 U.S. 195, 86 S.Ct. 1407, 16 L.Ed.2d 469 (1966).
The Supreme Court also stated in Garrison:
"Changing mores and the virtual disappearance of criminal libel prosecutions lend support to the observation that `... under modern conditions, when the rule of law is generally accepted as a substitute for private physical measures, it can hardly be urged that the maintenance of peace requires a criminal prosecution for private defamation.' Emerson, Toward a General Theory of the First Amendment, 72 Yale L.J. 877, 924 (1963). The absence in the Proposed Official Draft of the Model Penal Code of the American Law Institute of any criminal libel statute on the Louisiana pattern reflects this modern consensus. The ALI Reporters, in explaining the omission, [stated]:
"`It goes without saying that penal sanctions cannot be justified merely by the fact that defamation is evil or damaging to a person in ways that entitle him to maintain a civil suit. Usually we reserve the criminal law for harmful behavior which exceptionally disturbs the community's sense of security.... It seems evident that personal calumny falls in neither of these classes in the U.S.A., that it is therefore inappropriate for penal control, and that this probably accounts *943 for the paucity of prosecutions and the near desuetude of private criminal libel legislation in this country....' Model Penal Code, Tent. Draft No. 13, 1961, § 250.7, Comments, at 44."
379 U.S. at 69-70, 85 S.Ct. 209; see also Tollett v. United States, 485 F.2d 1087, 1094 (8th Cir.1973) (stating that "with the advent of Garrison and Ashton, a strong argument may be made that there remains little constitutional vitality to criminal libel laws").
Ivey cites Gottschalk v. State, 575 P.2d 289 (Alaska 1978), which notes the questionable history of criminal-defamation statutes in this country. In Gottschalk, the Supreme Court of Alaska stated:
"[T]his case is the first case since the organization of the Territory of Alaska in which a prosecution [for criminal defamation] is reflected in the reported cases. This near disuse of the crime is reflected throughout the United States. Dean Leflar's comprehensive study of criminal defamation uncovered 110 reported criminal defamation cases between 1920 and 1955 of which 58 were reported in the ten year period 1920-29, 34 appeared in the twelve years from 1930 through 1941 and only 18 in the fourteen years from 1942 through 1955. Among these, he found:
"`Nearly half the cases ... can be classified as basically political.... Commonest among the political cases were those in which prosecutions were filed against an unsuccessful political candidate or his supporters for statements made during a campaign, now ended, concerning his now successful opponent. Of the same sort were prosecutions of persons who, feeling aggrieved, made disagreeable statements about persons firmly entrenched in public office or power. One may suspect that in such cases the law was being used by the successful personage or his friends as a means of punishing their less potent enemies.'
"R. Leflar, [`The Social Utility of the Criminal Law of Defamation,' 34 Texas L.Rev. 984, 985-86 (1956)]. After studying the facts of these cases, Leflar concluded that criminal defamation prosecutions are brought primarily for the personal satisfaction of one close to the law enforcement apparatus who regards himself or an associate as having been defamed:
"`Modern criminal defamation prosecutions appear on analysis to serve pretty much the same function as the early prosecutions for libel of "great men." The usual pattern in the political cases, which are more numerous than any other type of case from 1920 on, is one of the "ins" prosecuting the "outs," of the winner prosecuting the loser. Even the nonpolitical cases have overtones of the same character. The successful prosecutions were, for the most part, for statements of a sort likely to have been unpopular at the time and place they were made.
"`Since jury sympathy with the position of complaining witnesses was almost a prerequisite to conviction, the appellate cases give little or no evidence that the criminal rule was used as a means of protecting politically powerless persons from defamations that might have appealed to mass prejudice. It was not much used as a sanction against irresponsible newspaper reports or editorials, though these have often been extremely damaging to libeled persons. In general it was not used against persons or groups in positions of influence or power and practically could not have been; rather, it was used on *944 behalf of such persons and groups against their detractors who were less fortunately situated.'"
575 P.2d at 294-95.
The court in Gottschalk declared Alaska's criminal-defamation statute unconstitutionally vague for its use of imprecise terms such as "defamatory" and "scandalous." These terms were not defined by the statute, and the court stated that the common-law definitions of these terms "[fell] far short of the reasonable precision necessary to define criminal conduct." 575 P.2d at 292. The court stated that "[e]ven if our criminal defamation statutes were sufficiently precise to escape the defect of vagueness, they would still be overbroad," and that the statutes failed to include an "actual-malice" requirement as required by New York Times and Garrison. Id. at 296.
Thus, to withstand Ivey's constitutional challenge, § 13A-11-163 must be governed by a requirement that the allegedly defamatory statements be made with "actual malice"with knowledge that the statements were false or with reckless disregard of whether it was false.
Alabama's criminal-defamation statute first appeared in the Alabama Code of 1876, and it has remained virtually unchanged ever since. Ivey argues that because the statute was enacted long before New York Times and Garrison were decided and has not been substantively changed, the statute does not contain the "actual-malice" requirement essential to its constitutionality, but merely requires that the allegedly defamatory statements be made "falsely and maliciously," as the statute plainly states.
The terms "actual malice" and "maliciously" are not interchangeable. In New York Times v. Sullivan, the Supreme Court held that for a statement to be made with "actual malice," it must be made "with knowledge that [the statement] was false or with reckless disregard of whether it was false or not." 376 U.S. at 279-80, 84 S.Ct. 710. Alabama caselaw, however, has implicitly defined "maliciously," as it relates to criminal defamation, as done with "ill-will or hatred towards the person against whom the accusation was made, or a purpose to injure him." See Beal v. State, 99 Ala. 234, 13 So. 783, 784 (1893).[2] In fact, in Riley v. State, 132 Ala. 13, 16, 31 So. 731, 732 (1902), this Court held:
"The offense [of criminal defamation] was complete if at the time laid in the indictment defendant spoke the words as charged, and they were both false and malicious. If such was the case the existence of probable grounds, other than the truth of those words, though admissible to be shown as tending to disprove malice (Beal v. State, 99 Ala. 234, 13 So. 783), did not excuse the uterance [sic]; nor was it essential to conviction that the utterance should have been intentionally wrong or reckless."[3]
(Emphasis added; citations omitted.)
The last reported appellate decision in Alabama involving a prosecution for criminal *945 defamation was Krasner v. State, 248 Ala. 12, 26 So.2d 526 (1946), almost 20 years before either Garrison or New York Times was decided. In Krasner, a political critic of the mayor of Warrior was prosecuted for distributing a leaflet alleging that the mayor had "pocketed" money improperly. This Court determined that "there may be fair and reasonable comment upon the conduct of a public official, and whether or not it is fair and reasonable is for the jury's consideration." 248 Ala. at 13-14, 26 So.2d at 527. The Krasner decision does not require that, in order to be made "maliciously" (as the statute requires), the allegedly defamatory statements be made with knowledge that they are false or with a reckless disregard for the truth.
The State points out that the criminal-defamation statute was reenacted as part of the new Criminal Code, and it argues that the Legislature was presumably aware of the constitutional mandates of New York Times and Garrison and that it would not have intentionally enacted an unconstitutional statute. However, the first portion of the statute, imposing criminal liability on "[a]ny person who writes, prints or speaks of and concerning any woman, falsely imputing to her a want of chastity," was, without question, unconstitutional when the Legislature reenacted the statute in 1980.[4] See Orr v. Orr, 440 U.S. 268, 99 S.Ct. 1102, 59 L.Ed.2d 306 (1979) (declaring unconstitutional an Alabama statute authorizing a court to impose an alimony obligation on a husband but not on a wife). The fact that in reenacting the criminal-defamation statute the Legislature retained this unconstitutional gender-based provision rebuts any presumption that the Legislature intended to comply with United States Supreme Court precedents that had been established since Krasner was decided in 1946 or since the criminal-defamation statute had been reaffirmed in the last codification of Alabama statutes (the 1975 Code, adopted in 1977). Additionally, we note that § 6-5-186, Ala. Code 1975, which deals with punitive damages in a civil action alleging libel, demonstrates that the Legislature was capable of drafting a statute contemplating the "actual-malice" standard of New York Times. Section 6-5-186 states that in order for the plaintiff to recover punitive damages for libel "it shall be proved that the publication was made by the defendant with knowledge that the matter published was false, or with reckless disregard of whether it was false or not."[5]
*946 Section 13A-11-163 does not on its face state that "actual malice," as the term is defined in New York Times and Garrison, is required in a prosecution for criminal defamation when the alleged victim is a public official or public figure. No Alabama caselaw has determined "actual malice" to be the standard in a prosecution for criminal defamation. Moreover, we cannot presume that the Legislature reenacted the statute with the intent that it be within the bounds of the First Amendment, when another portion of the statute contains a serious constitutional infirmity. Thus, we must conclude that § 13A-11-163 does not comport with the clearly expressed constitutional mandates of Garrison.
The State argues that, even if § 13A-11-163 does not expressly require "actual malice," it can be made constitutional by this Court's interpreting the statutory term "maliciously" to mean "with actual malice." The State further points out that the trial judge instructed the jury that in order to convict Ivey for criminal defamation it had to find that Ivey had acted with "actual malice" and that the judge then instructed the jury that to find "actual malice" it had to find that Ivey had acted with "either actual knowledge that the accusation was false or [with] a reckless disregard of whether or not the accusation was false or not"; the State then argues that, given these instructions, the charge was within the constitutional bounds of the First Amendment. Ivey and amicus curiae, the Reporters Committee for Freedom of the Press, argue that to construe "maliciously" as meaning with "actual malice," as that term is defined in New York Times and Garrison, would result in the addition of an entirely new element to the crime of criminal defamation an addition that can be made only by the Legislature. Ivey also contends that the trial court cannot be permitted to modify the criminal-defamation statute through jury instructions.
In Gottschalk, the State of Alaska argued that the Alaska criminal-defamation statutes should be narrowed to escape a holding of constitutional infirmity and that the trial court had properly narrowed them in its jury instructions; that argument was very similar to that presented here by the State of Alabama. The Supreme Court of Alaska, however, disagreed, and stated:
"We recognize the rule of construction that where it is reasonably possible to do so, statutes should be construed in a manner consistent with constitutional requirements. Here, however, ... we are not able to save the statute in question because in doing so we would be stepping over the line of interpretation and engaging in legislation.
"We are supported in our conclusion that it would be improper for us to engage in the radical reconstruction necessary to save [the statutes] from unconstitutionality by the decisions of other state courts which have dealt with the same problem. In Commonwealth v. Armao, 446 Pa. 325, 286 A.2d 626 (1972) the Pennsylvania Supreme Court struck down criminal libel statutes which suffered from the same defect as ours, stating:
"`The Commonwealth urges us to in effect re-draft the criminal libel statutes in accordance with First Amendment requirements. To accede to this request would be to undertake a wholly inappropriate judicial activity amounting to judicial legislation.'"
575 P.2d at 296. The Gottschalk court also noted:
"If we were to engage in the process of narrowing suggested by the State, after striking [the statute making truth a partial defense] we would then have to *947 decide whether [the defamation statute] should be limited only to cases of private defamation or should apply to defamation of public officials, public figures or concerning public issues; whether truth should be an absolute or a conditional defense to private defamation; and, whether a private false defamation which is neither knowingly nor recklessly false should be criminal. The variety of these choices underscores the essentially legislative nature of the task of bringing our defamation statutes within constitutional bounds."
575 P.2d at 296, n. 18.
The State cites Beck v. State, 396 So.2d 645 (Ala.1980), for the proposition that this Court can restructure the criminal-defamation statute to fit within constitutional bounds. In Beck, this Court, in order to avoid striking down the entire statute, severed a portion of Alabama's death-penalty statute that required the jury to fix the punishment at death if it found the defendant guilty of a capital offense. Unlike the criminal-defamation statute, however, the death-penalty provision had been adopted as part of an act that provided that "[i]f any part of this act is declared invalid or unconstitutional, such declaration shall not affect the part which remains." 396 So.2d at 657-58, n. 7 (quoting Act No. 213, § 9, Reg. Session, Ala. Acts 1975). Also, Beck recognizes that "[u]nder the separation of powers doctrine, this Court cannot change the offense, but a change in procedure to comport with constitutional requirements is not impermissible." 396 So.2d at 662 (emphasis added).
Other jurisdictions dealing with this issue have held their respective criminal-defamation statutes constitutionally invalid. In Fitts v. Kolb, 779 F.Supp. 1502 (D.S.C.1991), South Carolina's criminal-defamation statute, which had been enacted in 1912, was declared facially unconstitutional. The statute was challenged because it did not incorporate a requirement that the defamatory language be made with "actual malice." The court in Fitts stated:
"The South Carolina criminal libel statute lacks the high degree of protection afforded free expression by the `actual malice' standard, and allows the imposition of criminal penalties with no showing that the publisher knew the information being published was false or had a high degree of awareness of its probable falsity. Absent such a threshold, the South Carolina criminal libel statute is unconstitutional on its face because it would allow the prosecution of publishers of false information even if the publisher did not know the information was false, or if the publisher had no reckless disregard of probable falsity."
779 F.Supp. at 1515.
Similarly, New Mexico's criminal-defamation statute was held unconstitutional for the lack of an "actual-malice" requirement. State v. Powell, 114 N.M. 395, 839 P.2d 139 (N.M.Ct.App.1992). The court in Powell held that the statutory requirement that the offending statement be "false and malicious" was not equivalent to a requirement of "actual malice." In response to the State's contentions that the constitutional defect could be cured by jury instructions, the court stated:
"First, the State argues that jury instructions are procedural, not substantive, law and therefore are fully within the judiciary's power. We disagree. The addition of an element to a criminal offense is a matter of substantive law. To adopt the State's argument would be to say that in every matter tried to a jury, the judiciary is not bound by statutes in setting forth to the jury the applicable law.

*948 "Second, the State correctly points out that `[w]here a statute is susceptible to two constructions, one supporting it and the other rendering it void, a court should adopt the construction which upholds its constitutionality.' Yet, the requirement of `actual malice' cannot be found in any rational construction of the language of [the statute] defining the requisite intent for criminal libel. Because the statute defines the requisite intent, this is not a case where one can argue that statutory silence on the state-of-mind element of the offense creates an ambiguity. Moreover, it would stretch the imagination beyond human limits to say that there is an ambiguity in the criminal libel statute that permits it to be construed to require actual malice when the Constitution so requires but not to require actual malice otherwise. Nothing in the statute could be read to distinguish libel of public figures and officials and libel on matters of public concern from other cases of libel with respect to an actual-malice requirement.
". . . .
"As additional support for this proposition in the specific context of criminal libel statutes, we note that when other jurisdictions have confronted the question of what to do about a criminal libel statute that does not require proof of actual malice, none has inserted an actual-malice requirement into the statute....
"In short, we have no power to revise the language of the New Mexico criminal libel statute and insert an element of the offense that has not been present since the statute's initial enactment more than a century ago. We hold that [the statute] is unconstitutional as applied to a charge of libel predicated on public statements that involve matters of public concern.
". . . .
"... When a criminal libel statute does not require proof of actual malice, the Constitution prohibits prosecution under the statute of public statements that involve matters of public concern."
114 N.M. at 401-05, 839 P.2d at 145-49 (citations omitted); see also Commonwealth v. Armao, 446 Pa. 325, 286 A.2d 626 (1972); People v. Ryan, 806 P.2d 935 (Colo.1991); Eberle v. Municipal Court, 55 Cal.App.3d 423, 127 Cal.Rptr. 594 (1976); Weston v. State, 258 Ark. 707, 528 S.W.2d 412 (1975); but see Phelps v. Hamilton, 59 F.3d 1058 (10th Cir.1995) (construing the Kansas criminal-defamation statute to require "actual malice" in cases involving matters of public concern, where the criminal-defamation statute was first enacted in 1969 after New York Times and Garrison had been decided; United States Court of Appeals for the Tenth Circuit acknowledged Kansas law holding that the legislature, when amending a statute, presumably acts with full knowledge and information as to the subject of the statute, as to prior and existing legislation on the subject of the statute, and as to judicial decisions with respect to prior and existing law).[6]
The State asks this Court to construe Alabama's criminal-defamation statute, notwithstanding its plain language, to be consistent with the specialized requirements laid down in New York Times and Garrison. To do so, this Court would have to add the element of "actual malice," essentially revising the criminal-defamation statute. We would be required, as the Supreme Court of Alaska noted in Gottschalk it was being asked to do, to make *949 choices as to whether the changes would apply only to public figures. To add that element and to make those choices would constitute judicial legislation and would thus violate the separation-of-powers doctrine. See Art. III, §§ 42 and 43, Ala. Const. of 1901.
In summary, the United States Supreme Court has held that criminal-defamation statutes such as ours must require a showing of "actual malice," as defined in New York Times. Alabama's criminal-defamation statute requires no such showing, and this Court, without overstepping its constitutional limitations, cannot construe the statute as if "actual malice" were a requirement. We make no finding as to the sufficiency of the evidence the State presented in this present case; such a finding is made unnecessary by our conclusion that § 13A-11-163 is unconstitutional because it does not conform with the requirement of New York Times and Garrison. We reverse the judgment of conviction on the charge of criminal defamation and render a judgment of acquittal on that charge.

II. Venue of the Witness-Tampering Charge
Ivey was charged with tampering with a witness, § 13A-10-124, Ala.Code 1975. That statute provides:
"(a) A person commits the crime of tampering with a witness if he attempts to induce a witness or a person he believes will be called as a witness in any official proceeding to:
"(1) Testify falsely or unlawfully withhold testimony; or
"(2) Absent himself from any official proceeding to which he has been legally summoned."
The indictment charging Ivey stated that Ivey had attempted to induce Scott Nordness "to testify falsely or unlawfully withhold testimony" in the case of Melissa Myers v. Stephen R. Windom.
The evidence at trial showed that Ivey contacted Nordness to arrange a meeting to discuss Windom's allegations against Ivey and ATLA. The two agreed to meet at a service station between Birmingham and Jasper, apparently either in Jefferson County or in Walker County. Unknown to Nordness, Ivey recorded their conservation. During this meeting, Ivey presented, for Nordness to execute, an affidavit Ivey had drafted. That affidavit stated that Nordness had not bribed Myers to make the allegations against Windom. Later in the conversation, Ivey went over the proposed affidavit with Nordness, who said that the statements in the affidavit were true. Nordness signed the affidavit. He testified that the affidavit was, in fact, accurate and that Ivey had not asked him to testify falsely or to withhold testimony.
Ivey claims that the State failed to produce sufficient evidence to support a finding that the alleged offense of witness tampering occurred in Mobile County; such evidence was essential to the prosecution of this charge in Mobile County. The State argues, however, that because the proceeding in which Ivey is alleged to have attempted to have Nordness testify falsely was initiated in Mobile County, venue for the charge was proper there. The State also contends that Ivey's alleged "criminal scheme" stretched to several counties, including Mobile County, and that this fact is further proof that venue was proper in Mobile County. The State cites § 15-2-6, Ala.Code 1975, which reads:
"When an offense is committed partly in one county and partly in another or the acts or effects thereof constituting or requisite to the consummation of the offense occur in two or more counties, venue is in either county."
The State contends that the witness-tampering charge was an integral part of *950 Ivey's "criminal scheme," and that where a crime occurs in one county but related events occur in another county, venue is proper in both counties.
In Buffo v. State, 415 So.2d 1146, 1154 (Ala.Crim.App.1980), rev'd on other grounds, 415 So.2d 1158 (Ala.1982), the Court of Criminal Appeals stated:
"In a criminal prosecution the accused has a constitutional right to a trial `[in] the county or district in which the offense was committed.' U.S. Const. Amendment VI; Ala. Const. [of 1901,] Art. I, § 6, [Williams v. State, 383 So.2d 547 (Ala.Cr.App.1979), aff'd, 383 So.2d 564 (Ala.1980)]. Proof of venue is necessary to sustain a conviction, Grace v. State, 369 So.2d 318 (Ala.Cr.App.1979), and `must be properly laid to give jurisdiction.' Barlow v. Garrow, Minor 1 (Ala.1820). Unless otherwise provided by law, venue of all public offenses is in the county in which the offense was committed. Stokes v. State, 373 So.2d 1211 (Ala.Cr.App.), cert. denied, 373 So.2d 1218 (Ala.1979). The burden of establishing venue is on the State. Willcutt v. State, 284 Ala. 547, 226 So.2d 328 (1969)."
See also § 15-2-2, Ala.Code 1975 (stating that "[u]nless otherwise provided by law, the venue of all public offenses is in the county in which the offense was committed").
In Ex parte Watts, 435 So.2d 135, 136-37 (Ala.1983), this Court held:
"Unless some special venue statute applies [to the criminal charge], an offense may be prosecuted only in the county where the accused has committed the unlawful act on which the prosecution against him is based....
". . . .
"Proof of venue is jurisdictional and without such proof ... a conviction cannot be sustained."
The State concedes that the conduct it claims constituted Ivey's "actual attempt" to persuade Nordness to testify untruthfully or to suppress the truth took place during the taping of the conversation between Nordness and Ivey. However, the State maintains that the evidence must be viewed as a whole in order to infer Ivey's intent or motive.
In Ex parte Hunte, 436 So.2d 806 (Ala. 1983), this Court determined that the proper venue for a charge of Medicaid fraud, § 22-1-11, Ala.Code 1975, was Mobile County, where the defendant prepared the false statement. In Hunte, the State argued that because the false statements had to be turned over to the Medicaid agency in order to recover funds, the proper venue was Montgomery County, where the Medicaid agency was located. This Court held that a prosecution under § 22-1-11 did not require reliance on the misrepresentations in order for the agency to finally approve payment; therefore, it wrote, "[T]he crime [of Medicaid fraud] is complete, once one, with intent to defraud, makes or causes to be made or assists in the preparation of any false statement, representation or omission of a material fact in any claim or application for any payment." 436 So.2d at 808.
We conclude that § 13A-10-124 does not require that the false testimony or the withholding of testimony be carried out in order for the charge of witness tampering to be complete. Section 13A-10-124 criminalizes the attempt to induce a witness to testify falsely. Here, the crime was complete when Ivey allegedly "attempted to induce" Nordness to testify falsely. The State conceded at oral argument that this conduct occurred during the taped conversation between Ivey and Nordness. That conversation, so far as the record demonstrates, occurred in either *951 Jefferson County or Walker County. The State's reliance upon § 15-2-6 is misplaced, because that statute requires that "the acts or effects thereof constituting or requisite to the consummation of the offense occur in two or more counties" in order for venue to be appropriate in any such county. Here, the offense was complete upon the alleged attempt, which did not occur in Mobile County where Ivey was indicted. Thus, the State did not sustain its burden of proving that the offense occurred in Mobile County. Where no conviction can be had under the indictment, for failure to prove the essential acts or effects constituting or requisite to the consummation of the crime in the county where the defendant was indicted, a motion for judgment of acquittal is due to be granted and its erroneous denial requires that the judgment of conviction be reversed and a judgment of acquittal rendered. See Culligan v. State, 29 Ala.App. 29, 191 So. 405 (1939). We reverse the trial court's order denying Ivey's motion for a judgment of acquittal on the charge of tampering with a witness and render a judgment of acquittal.

III. Other Issues
Because of our rulings regarding the constitutionality of the criminal-defamation statute and the proper venue for the witness-tampering charge, we pretermit discussion of issues 2, 4, and 5 raised by Ivey (see 821 So.2d at 940, supra).

IV. Conclusion
We reverse the convictions on the charges of criminal defamation and tampering with a witness, and as to both of those charges we render a judgment of acquittal.
REVERSED AND JUDGMENTS RENDERED.
HOUSTON, SEE, BROWN, JOHNSTONE, HARWOOD, WOODALL, and STUART, JJ., concur.
MOORE, C.J., concurs in part and dissents in part.
MOORE, Chief Justice (concurring in part and dissenting in part).
I concur with the majority insofar as it holds that Mobile County was not the appropriate venue in which to indict and try the defendant Garfield W. Ivey on the witness-tampering charge. However, I respectfully dissent from that portion of the majority's opinion striking Alabama's criminal-defamation statute as facially unconstitutional and reversing the conviction under that statute. I believe that the statute, when read in its entirety, contains the requirement of "actual malice" as defined by the United States Supreme Court in Garrison v. Louisiana, 379 U.S. 64, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964). Therefore, I would uphold the conviction of criminal defamation.
In determining the constitutionality of a statute, this Court has a duty to presume that the Legislature intended to enact a statute that does not violate the United States Constitution or the Alabama Constitution. See Centennial Assocs., Ltd. v. Clark, 384 So.2d 616, 618, citing Pruett v. Patton, 288 Ala. 710, 265 So.2d 130 (1972). "In addressing the alleged constitutional infirmities of the Act, we are conscious of the well-established rule requiring courts to defer to the policy-making authority of the Legislature by rejecting constitutional challenges to statutes, where it is possible to do so." Alabama Power Co. v. Citizens of the State of Alabama, 740 So.2d 371, 377 (Ala.1999) (citations omitted). This Court has stated:
"Uniformly, the courts recognize that [the power to strike down a statute as unconstitutional] is a delicate one, and to *952 be used with great caution.... It follows that, in passing upon the constitutionality of a legislative act, the courts uniformly approach the question with every presumption and intendment in favor of its validity, and seek to sustain rather than strike down the enactment of a coordinate branch of the government. All these principles are embraced in the simple statement that it is the recognized duty of the court to sustain the act unless it is clear beyond reasonable doubt that it is violative of the fundamental law.
"Another principle which is recognized with practical unanimity, and leading to the same end, is that the courts do not hold statutes invalid because they think there are elements therein which are violative of natural justice or in conflict with the court's notions of natural, social, or political rights of the citizen, not guaranteed by the constitution itself. Nor even if the courts think the act is harsh or in some degree unfair, and presents chances of abuse, or is of doubtful propriety. All of these questions of propriety, wisdom, necessity, utility, and expediency are held exclusively for the legislative bodies, and are matters with which the courts have no concern. This principle is embraced within the simple statement that the only question for the court to decide is one of power, not of expediency or wisdom."
Alabama State Fed'n of Labor v. McAdory, 246 Ala. 1, 9-10, 18 So.2d 810, 814-15 (1944) (citations omitted).
In Garrison v. Louisiana, supra, the United States Supreme Court struck down Louisiana's criminal-defamation statute because it punished individuals who made true statements with actual malice and because it explicitly stipulated that false statements were presumed to be malicious. Louisiana caselaw had defined "actual malice" to mean hatred, ill will, enmity, or a wanton desire to injure. The Court in Garrison held that in order to hold a person criminally liable for statements made against a public official, the statute must require that the statements at issue be false and be made with "actual malice," i.e., with knowledge that they are false or with a reckless disregard as to whether they are false.
Alabama's criminal-defamation statute, § 13A-11-163, Ala.Code 1975, was reenacted in 1980, sixteen years after the Garrison decision. Therefore, we must assume that the Legislature intended to enact a statute that comports with the Garrison requirement. The statute provides:
"Any person who writes, prints or speaks of and concerning any woman, falsely imputing to her a want of chastity; and any person who speaks, writes or prints of and concerning another any accusation falsely and maliciously importing the commission by such person of a felony or any other indictable offense involving moral turpitude shall, on conviction, be punished by fine not exceeding $500.00 and imprisonment in the county jail, or sentenced to hard labor for the county, not exceeding six months, one or both, at the discretion of the jury."
Ala.Code 1975, § 13A-11-163. The majority notes that the first portion of § 13A-11-163, which clearly is not applicable to this case, does not comport with constitutional standards. The majority then concludes that this Court has no duty to assume that the rest of the statute is constitutional. The defendant was not charged with violating the first portion of the statute. More importantly, that first portion is separate and severable from the portion of the statute at issue in this case. *953 Therefore, the unconstitutionality of the first portion does not relieve the Court of its duty to presume the constitutionality of the rest of the statute. In State ex rel. Pryor v. Martin, 735 So.2d 1156, 1159 (Ala.1999), this Court held that the Legislature had expressly intended for courts to "sever and save statutory provisions not tainted by the unconstitutionality of other provisions in the same statute," by its enacting of Ala.Code 1975, § 1-1-16.[7] This Court stated: "`[T]he authority of a court to eliminate invalid elements of an act and yet sustain the valid elements is not derived from the legislature, but rather flows from powers inherent in the judiciary.'" 735 So.2d at 1158, quoting 2 Norman J. Singer, Sutherland Statutory Construction, § 44.08 (5th ed.1992).
Section 13A-11-163, Ala.Code 1975, is markedly different from the constitutionally infirm Louisiana statute at issue in Garrison. Section 13A-11-163 requires that "any person who speaks, writes or prints of and concerning another any accusation falsely and maliciously importing the commission by such person of a felony or any other indictable offense involving moral turpitude shall, on conviction, be punished." This statute does not punish true statements, and it does not allow for a presumption that all false statements are malicious. Black's Law Dictionary states, "The word `falsely,' particularly in a criminal statute, suggests something more than a mere untruth and includes perfidiously or treacherously or with intent to defraud." Black's Law Dictionary 602 (6th ed.1990). In order to speak falsely, one must have knowledge that the statements he or she makes are false. Mere negligence is insufficient. Making a false statement with malicious intent but without knowledge of the statement's falsity differs from "speaking falsely" with malicious intent, because speaking falsely implies a moral elementknowledge of the statement's falsity. This knowledge is what the United States Supreme Court required in Garrison in order to make a false statement punishable. When read in its entirety, Alabama's criminal-defamation statute requires knowledge on the part of the defendant that the allegedly defamatory statements are false.
The majority contends that § 13A-11-163 cannot possibly require that a defendant have knowledge of the statement's falsity, because of judicial construction and definitions given to that statute in 1893 and 1902. However, when the United States Supreme Court in 1964, in Garrison, supplied constitutional requirements for criminal-defamation statutes, the cases cited by the majority were implicitly overruled insofar as they conflicted with those requirements. The criminal-defamation statute was reenacted in 1980. Twenty years after the reenactment of the statute, the trial court in this case properly instructed the jury that it must find "actual malice" under Alabama's criminal-defamation statute. It is not illogical to assume that the standard for criminal-defamation statutes announced by the United States Supreme Court in Garrison supplanted *954 the definitions supplied by this Court for § 13A-11-163. Therefore, I do not believe Riley v. State, 132 Ala. 13, 16, 31 So. 731, 732 (1902), and Beal v. State, 99 Ala. 234, 13 So. 783, 784 (1893), to be authoritative on how this Court must rule.
Additionally, the majority implies that in order to save that portion of the statute under which this defendant was prosecuted, this Court would have to violate the separation-of-powers doctrine and to legislate. At the close of the trial, the court instructed the jury by using the "actual-malice" standard stated by the United States Supreme Court in Garrison. This was not an impermissible judicial construction of § 13A-11-163. It would have been impermissible for the trial judge to redefine a term that the Legislature had explicitly defined in the statute. In this case, in the absence of an express legislative definition, the ordinary meaning of the term "maliciously" is implied, and the trial court defined the term in conformity with the "actual-malice" standard stated in Garrison.
The United States Supreme Court has held that a criminal-defamation statute must require that, to be punishable, statements be false and be made by a person having knowledge of their falsity or acting with a reckless disregard as to whether they are true. Alabama's criminal-defamation statute punishes anyone who "speaks, writes or prints of and concerning another any accusation falsely and maliciously importing the commission by such person of a felony or any other indictable offense involving moral turpitude." This wording, by definition and by judicial instruction, requires that a defendant have knowledge of the statement's falsity. A reasonable person reading the statute would know what actions are prohibited, and certainly an attorney, such as Garfield Ivey, charged with knowledge of the law, can be held to no lesser standard. The use of the words "speaks, writes or prints... any accusation falsely and maliciously" requires the speaker's knowledge of the falsity. The trial judge's instructions ensured that the jury would not use an unconstitutional definition of "maliciously."
Considering the statute in light of these principles, and with the presumption of constitutionality that this Court must give to statutes passed by the Legislature, I cannot conclude that § 13A-11-163 is unconstitutional.
Because I believe Alabama's criminal-defamation statute meets the standard stated in Garrison, I would affirm the conviction of criminal defamation. Therefore, I dissent from that portion of the opinion and judgment reversing that conviction.
NOTES
[1] The State also contends that Ivey has no standing to challenge the constitutionality of § 13A-11-163 because "[t]he statute clearly and constitutionally applies to his crime." See New York v. Ferber, 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982). However, Ferber deals with the distribution of child pornography, which is considered to be outside of the protections of the First Amendment. 458 U.S. at 754, 102 S.Ct. 3348. The Supreme Court, in Bigelow v. Virginia, 421 U.S. 809, 816, 95 S.Ct. 2222, 44 L.Ed.2d 600 (1975), in the context of conduct protected by the First Amendment, held:

"We give a defendant standing to challenge a statute on grounds that it is facially over-broad, regardless of whether his own conduct could be regulated by a more narrowly drawn statute, because of the `danger of tolerating, in the area of First Amendment freedoms, the existence of a penal statute susceptible of sweeping and improper application.'"
(Footnote cont'd.)
(Emphasis added.) Therefore, we conclude that Ivey, having been convicted under § 13A-11-163, has standing to challenge the statute.
[2] The definition of malice set out in Beal is similar to that set out in the Louisiana caselaw cited in the emphasized portion of the quotation from Garrison, supra, 821 So.2d at 942.
[3] The Chief Justice, in his special writing, argues that "[a] reasonable person reading the statute would know what actions are prohibited, and certainly an attorney, such as Garfield Ivey, charged with knowledge of the law, can be held to no lesser standard." 821 So.2d at 954. The Chief Justice then attributes to the statutory language a requirement of "the speaker's knowledge of the falsity." 821 So.2d at 954. The Justices of this Court in 1902 in Riley, construing the very same language, reached the opposite conclusion when they held, "[N]or was it essential to conviction that the utterance should have been intentionally wrong or reckless." 132 Ala. at 16, 31 So. at 732. Reasonable persons obviously differ.
[4] Alabama's Criminal Code was adopted in 1977 and was to take effect as Title 13, "Crimes and Offenses," on May 17, 1978. However, the Criminal Code was later amended and the effective date was extended to January 1, 1980, and it was designated as Title 13A, "Criminal Code." As of that date, all sections of Title 13, Ala.Code 1975, were either repealed or transferred to Title 13A. The criminal-defamation statute was originally designated § 13-6-203 of Title 13, but was transferred to Title 13A as § 13A-11-163.
[5] The Chief Justice, in his special writing, contends that this Court should ignore Beal and Riley because, he says, those decisions have been "implicitly overruled insofar as they conflicted with [the constitutional requirements in Garrison]." 821 So.2d at 953. The Legislature ignored numerous opportunities to codify its recognition of this implicit overruling, including the reenactment in 1980 of § 13A-11-163; when that section was reenacted, the constitutionally correct "actualmalice" standard was not incorporated into it, although the Legislature did incorporate that standard as to civil actions for defamation, while, at the same time, maintaining in § 13A-11-163 the constitutionally impermissible gender-based element of the defamation offense.
[6] The Kansas Legislature immediately thereafter redrafted the statute to include "actual malice" as that phrase is defined in New York Times. Kans. Stat. Ann. § 21-4004 (1995).
[7] The majority opinion incorrectly implies that in order for this Court to uphold the remaining provisions of an act when one provision is found to be unconstitutional, each act that is codified must contain a "severance" clause. However, § 1-1-16 provides:

"If any provision of this Code or any amendment hereto, or any other statute, or the application thereof to any person, thing or circumstances, is held invalid by a court of competent jurisdiction, such invalidity shall not affect the provisions or application of this Code or such amendment or statute that can be given effect without the invalid provisions or application, and to this end, the provisions of this Code and such amendments and statutes are declared to be severable."