MOORE, Judge,
concurring specially.
I concur in the main opinion’s decision to reverse the trial court’s judgment and to remand the cause for the trial court to enter a new judgment limiting the employee to permanent-partial-disability benefits as set out in “the schedule,” Ala.Code 1975, § 25-5-57(a)(3)a. I write specially to address the perceived harshness or unfairness of applying the schedule to this case.
Before the advent of workers’ compensation laws, employees injured in work-relat *1208 ed accidents depended on the common law or the Employers’ Liability Act, Title 26, § 326 et seq., Ala.Code 1940, as their exclusive forms of redress. See Reed v. Brunson, 527 So.2d 102 (Ala.1988). In order to recover any compensation from an employer, an employee basically had to prove that the injury resulted from the employer’s direct, as opposed to vicarious, negligence. See Fireman’s Fund American Ins. Co. v. Coleman, 394 So.2d 334, 341 (Ala.1980) (Jones, J., concurring in the result). In addition, the employer could raise the affirmative defenses of contributory negligence, assumption of the risk, or the fellow-servant doctrine to defeat an employee’s claim. Id. As a result, the vast majority of employees injured in work-related accidents received no monetary compensation from their employers. See Samuel B. Horovitz, Injury and Death Under Workmen’s Compensation Laws (Wright & Potter Printing Co.1944) (estimating that close to 80% of all injured employees did not receive any compensation from their employers under the common law and Employers’ Liability Act).
In 1919, our legislature resolved this issue, and many other problems associated with work-related injuries, by enacting Alabama’s first workmen’s compensation law, Ala. Acts 1919, Act No. 245, a new method for compensating employees that eliminated fault as a basis for an employer’s liability. Id. (imposing liability on the employer for workmen’s compensation benefits “without regard to the question of negligence”). Under the new theory of workmen’s compensation, the employer’s liability is predicated solely on the relationship between the injury and the work so that an employee is entitled to compensation on account of a disabling injury caused by an accident arising out of and in the course of the employment. See Pound v. Gaulding, 237 Ala. 387, 187 So. 468 (1939).
In exchange for the elimination of the fault requirement and the removal of the main barrier to receiving any redress for a work-related injury, an employee surrenders his or her right to full indemnification for the damages sustained due to the work-related injury. See Reed v. Brun-son, supra. Instead, the extent of an employee’s monetary recovery from an employer is controlled exclusively by the “schedules,” see Woodward Iron Co. v. Bradford, 206 Ala. 447, 90 So. 803 (1921), that are now set out in § 25-5-57, Ala. Code 1975.
The schedules generally premise the compensation due an employee on the duration (temporary or permanent) and extent (partial or total) of the loss of earning capacity caused by the work-related injury and the amount of the employee’s average weekly earnings. However, the subsection of our current Workers’ Compensation Act dealing with permanent partial disability is subdivided into two parts. See Ala.Code 1975, § 25-5-57(a)(3)a. & g. The first part, § 25-5-57(a)(3)a., lists a series of body parts or combinations of body parts and generally establishes that if an employee’s injury causes a loss or loss of use of the designated body part, the employee is entitled only to compensation based on two-thirds of his or her average weekly earnings for the corresponding number of weeks. See Exparte Drummond Co., 837 So.2d 831 (Ala.2002). This list is now known as “the schedule.” See id.
The schedule serves the basic purposes of the workers’ compensation laws by making certain the compensation payable to an injured employee who suffers an enumerated injury. See generally Leach Mfg. Co. v. Puckett, 284 Ala. 209, 224 So.2d 242 *1209 (1969). By establishing the compensation payable for certain injuries, the schedule eliminates the need for litigation to determine the amount of compensation owed, thus avoiding any delay in payment to the injured employee and further avoiding administrative expenses. Id.
The benefits established in the schedule have historically been less than those available outside the schedule. In cases of injury to only a single member, the original schedule provided an employee 50 percent of his or her average weekly earnings for as little as 11 weeks (for loss of a toe other than the great toe) or as much as 222 weeks (for the loss of an arm). Ala. Acts 1919, Act No. 245, p. 206. On the other hand, nonscheduled permanent-partial-disability benefits would provide an employee the same level of benefits for up to 300 weeks. Id. Even in disastrous cases in which an employee lost both arms or both legs, the schedule provided benefits based on 50 percent of the employee’s average weekly earnings for only 400 weeks. Id. On the other hand, nonscheduled permanent-total-disability benefits, also based on 50 percent of an employee’s average weekly earnings, could last for as long as 550 weeks. Id. The legislature evidently concluded either that the nature of the injuries covered by the schedule warranted lesser benefits or that the benefits an employee gained from immediate payment and avoidance of litigation costs warranted a reduction in the compensation payable.
When viewed historically, the schedule should be considered a fair exercise of legislative power. From the viewpoint of employees, the schedule replaces an uncertain and prolonged remedy with a method of certain and immediate relief. An employee may have been able to recover more damages under prior law, but only in 20% to 30% of the cases, a risk most employees would not take if given the choice. From the viewpoint of an employer, the schedule provides a predictable and easily determined method for figuring the extent of its liability so that it may readily and routinely absorb those costs. From the viewpoint of society, the schedule avoids litigation and administration expenses, thus reducing the overall cost of workers’ compensation, which, in turn, reduces the price of those products and services subject to the “workers’ compensation tax.” The elimination of extraneous litigation and administrative expenses also benefits society by increasing the funds available for raising wages and creating new job opportunities, both of which stimulate the growth of the economy.
At least two changes in the Alabama workers’ compensation laws have raised questions as to the fairness of the amount of scheduled compensation, however. First, in 1975, the legislature deleted any limitation on the number of weeks of compensation payable for a permanent total disability. See Ala. Acts 1975, Act No. 75-86, § 4. After this amendment, permanent-total-disability benefits became payable “during the permanent total disability,” Ala.Code 1975, § 25-5-57(a)(4)a., which may, and usually does, last well beyond 550 weeks. However, the basic weekly limits set out in the schedule have never changed. Thus, the Workers’ Compensation Act allows an employee receiving permanent-total-disability benefits to recover such benefits for a far greater number of weeks than an employee receiving benefits under the schedule.
Second, in 1985, the legislature limited the amount of weekly compensation benefits available to an employee for a perma *1210 nent partial disability to the lesser of $220 or 100% of the employee’s average weekly earnings. Ala. Acts 1984, 2d Ex.Sess., Act No. 85-41, § 7, amending Ala.Code 1975, § 25-5-68(a). This limitation applies to scheduled injuries that fall under the permanent-partial-disability subsection. See USX Corp. v. Mabry, 607 So.2d 249 (Ala. Civ.App.1992). On the other hand, permanent-total-disability benefits are limited only by the state’s average weekly wage, see Ala.Code 1975, §§ 25-5-57(a)(4)a. and 25-5-68(a), which is currently $682.[4]
After those changes, the difference between the amount of compensation available within and outside the schedule have changed markedly. For example, in this case, if the employee is limited to a 17% loss of use of the foot, he would be entitled to $220 per week for 24 weeks, or a total of $5,280 in permanent-partial-disability benefits.[5] On the other hand, if the employee received permanent-total-disability benefits for his predicted lifetime, he would be entitled to benefits with a present value on the date of the judgment of $306,937.44.
The vast disparity between scheduled and nonscheduled benefits that exists today seems unfair. From the viewpoint of an injured employee, it is unfair that his or her compensation would be so much less for a scheduled injury than for a nonscheduled injury with similar wage-earning ramifications, with the amount hinging on such arbitrary factors as the location of the injury or the degree and constancy of pain. From the viewpoint of the employer, it is unfair that an employee with a nonscheduled injury receives so much more than an employee with a scheduled injury and that reserves and settlements must account for the possibility of a nonscheduled award. Most importantly, from the viewpoint of society, the disparity has undermined the supporting principles behind the schedule, resulting in exceptions to the exclusivity of the schedule. See Ex parte Drummond Co., 837 So.2d at 837-38 (Moore, C.J., concurring specially). See also Masterbrand Cabinets, Inc. v. Johnson, 984 So.2d 1136 (Ala.Civ.App.2005), aff'd, Ex parte Masterbrand Cabinets, Inc., 984 So.2d 1146 (Ala.2007). Those exceptions render the amount of compensation due uncertain and subject to prolonged and expensive litigation, see, e.g., Shoney’s Inc. v. Rigsby, 971 So.2d 722 (Ala.Civ.App.2007); Chadwick Timber Co. v. Philon, 10 So.3d 1014 (Ala. Civ.App.2007); Boise Cascade Corp. v. Jackson, 997 So.2d 1026 (Ala.Civ.App. 2007); and General Elec. Co. v. Baggett, 1 So.3d 1015 (Ala.Civ.App.2007), leading to escalating workers’ compensation costs and the diversion of funds to purely administrative expenses, leading to higher prices and less economic growth.
With that said, it is not the function of this court to pass on the fairness of a statute. Ivey v. State, 821 So.2d 937 (Ala. 2001). Any complaints regarding the harshness or the unfairness of the schedule should be directed to the legislature, which is the body that created this remedy and which is the only body that can ad *1211 dress its perceived deficiencies. Until the legislature amends the law, it is our duty to apply the statute as written. Id.
In this case, the employee asserts that the judgment of the trial court should be affirmed because, he says, the injury to his right foot extends to and impairs other parts of his body, satisfying the Drum-mond exception to the exclusivity of the schedule. However, the employee presented no evidence indicating that any nonscheduled portion of his body has been impaired because of his right-foot injury. The employee’s assertion that his right-foot injury affects his preexisting left-foot condition is totally refuted by the testimony of his physician to the contrary. Although it is true that the right-foot injury is more problematic for this employee because of his prior left-foot impairment, the record is devoid of any evidence indicating that the right-foot injury has aggravated or otherwise affected the left-foot problem. Even if it did, the injury would still be within the schedule for the loss of use of two feet. See Ala.Code 1975, § 25-5-57(a)(3)a.27.
The employee also argues that his right hand is impaired because he has to use it to grip a cane while walking. The record contains no evidence indicating that the right-foot injury has injuriously affected the employee’s right hand. Again, even if it did, the injury would remain within the schedule. See Ala.Code 1975, § 25-5-57(a)(3)a.29. Accordingly, there is no substantial evidence to support a finding that the employee’s right-foot injury extends to any other nonscheduled part of the employee’s body and interferes with its efficiency. The trial court’s judgment awarding benefits outside the schedule is therefore due to be reversed.

. On the date this opinion was released, this information could be accessed on-line at: http://dir.alabama.gov/docs/guides/wcJ1007 weeklywage.pdf. A copy of this information is also available in the case file of the clerk of the Alabama Court of Civil Appeals.

. These figures are used as an example and are not intended to indicate any limitation on the employee's compensation on remand. However, I do not agree that the record indicates that the employee could be entitled to benefits for the loss of use of a leg because the evidence indicates that his loss is limited to the right foot, which entitles him to, at most, 139 weeks of benefits. See Ala.Code 1975, § 25-5-5 7(a)(3)a. 14.