LYONS, Justice.
Stephen R. Windom petitions this Court for a writ of mandamus directing the Walker Circuit Court to grant Windom’s motion to transfer this action to Mobile County. We grant the petition.
This is the fourth time some aspect of the dispute between Windom and Garfield Ivey has been before this Court. See Ivey v. State, 821 So.2d 937 (Ala.2001) (reversing Ivey’s convictions for criminal defamation and witness tampering); Ex parte Windom, 763 So.2d 946 (Ala.2000) (“Wmdom /”) (denying Windom’s first mandamus petition, which sought a writ directing *886 the Walker Circuit Court to stay all discovery pending a ruling on Ms motion to transfer the action to Mobile County); and Ex parte Windom, 776 So.2d 799 (Ala.2000) (“Windom II”) (granting Windom’s second mandamus petition and directing the Walker Circuit Court to limit discovery to the venue issue). In Ivey, we set forth the essential facts underlying this dispute:
“On September 11, 1998, Melissa Myers commenced a civil action in the Mobile Circuit Court, alleging that Steve Windom, a state senator and nominee of the Republican Party for the office of Lieutenant Governor, had ‘solicited and engaged the services of [Myers] for the purposes of obtaining sex and sexual services in exchange for money’ and that Windom had ‘violently and physically abused, attacked, struck, slapped, physically restrained and injured [Myers] against her will.’ The complaint also included allegations of rape, forcible sodomy, and sexual assault and battery. Myers requested compensatory and punitive damages of ' an unspecified amount.
“A press release that contained information about Myers’s lawsuit against Windom was released to the media. A videotape of Myers’s statement regarding the allegations of her lawsuit was given to Jodi Brooks of a Mobile television station. Portions of the videotape were televised by the Mobile television station on September 15, 1998, during its nightly news broadcast. In response, Windom held a press conference denying Myers’s allegations; in that press conference he stated that Myers had been paid by ... Ivey to fabricate the story on which the complaint was based.”
Ivey, 821 So.2d at 939 (emphasis added).
Windom’s press conference was held in Montgomery on September 14, 1998. The next day, news of the press conference appeared in the Daily Mountain Eagle (“the Eagle ”), a newspaper printed in Walker County. After the phrase “MOBILE (AP),” the Eagle reported, in pertinent part:
“Windom, meanwhile, filed a counter-suit claiming he never met the woman and that political opponents came up with the false allegations. Windom contends Myers ... was paid $2,700 to make the claim in a scheme funded by a prominent trial lawyer.
[[Image here]]
“Windom, a Republican state senator from Mobile, in his countersuit for libel claimed Myers was paid at least $2,700 by his political foes to make false claims against him....
“Windom said his campaign determined that Jasper attorney Garve Ivey, a prominent trial lawyer, chartered a plane that brought some people to Mobile on Thursday to get a statement from Myers....
“Windom also said Ivey, a financial supporter of [his opponent], paid a man ... $5,000 to set up the whole case.”
“Woman Suing Windom Held for Psychiatric Testing,” Eagle, September 15, 1998, at Al. On October 22,1998, the Eagle printed a news report prefixed by the phrase “MONTGOMERY (AP)” containing similar statements. “Ivey Threatened With Lawsuit,” Eagle, October 22,1998, at Al.
On August 16, 1999, Ivey sued Windom in Walker County, alleging defamation based in part on the news reports printed in the Eagle. Contending that venue is improper in Walker County, Windom sought an order from the Walker Circuit Court transferring the action to Mobile County, the county of his residence, and staying all discovery pending a decision on the transfer motion and a resolution of the criminal charges then pending against *887 Ivey. See Windom II, 776 So.2d at 801; Windom I, 763 So.2d at 948. Ultimately, this Court refused to order that discovery be stayed, Windom I, but did order that discovery be limited to the venue issue. Windom II, 776 So.2d at 804.
On December 17, 2001, the trial court entered an order denying Windom’s motion to transfer. That order stated, in pertinent part:
“Count I of [Ivey’s] complaint alleges that [Windom] defamed [Ivey] by causing certain false and defamatory statements to be published. In response to [Windom’s] Motion to Transfer Venue, [Ivey] contends that some of the defamatory statements on which his defamation claim is based were published in Walker County, Alabama, thereby making venue proper in this county.
[[Image here]]
“Although [Ivey’s] complaint does not precisely specify all of the allegedly defamatory statements on which Count I relies, [Ivey] has submitted an affidavit in which he testifies that:
“ ‘The claims in this complaint arise in part from false and defamatory statements made by the defendant Windom, about me, as published in the [Eagle ]. The [Eagle ] is a newspaper of general circulation printed and published in Walker County, Alabama.’
“(Affidavit of Garfield W. Ivey, Jr.) Attached to [Ivey’s] affidavit are copies of three newspaper articles published in the [Eagle ] containing statements attributed to [Windom] concerning [Ivey], many of which, if false, might well serve as the basis for allegations of defamation.
“In Ex parte Arrington, 599 So.2d 24 (Ala.1992), the Alabama Supreme Court held that ‘in actions against individuals alleging the publication of libelous matter in a newspaper article, venue lies in the county in which the newspaper was printed.’ 599 So.2d at 26. In the present case, the newspaper containing the allegedly defamatory statements ... was printed in Walker County. It would appear, therefore, that venue as to [Ivey’s] defamation claim is proper in this county.
“Unquestionably, the acts complained of in count I of [Ivey’s] complaint occurred in Walker County, Alabama; consequently, venue is proper in Walker County, Alabama, and [Windom’s] Motion to Transfer Venue based on Alabama Code Section 6-3-2(a)(3) should be, and the same is, hereby DENIED.”
(Emphasis in the trial court’s order.) Windom now seeks a writ of mandamus directing the trial court to vacate that order and to transfer the action to Mobile County, the county in which Windom resides.
“We note at the outset that the proper remedy for one seeking to avoid the unnecessary expense of a trial in [an improper] forum following an adverse ruling on a motion to change venue is a writ of mandamus.” Ex parte Jim Walter Homes, Inc., 712 So.2d 733, 734 (Ala.1998). Of course, the issue of improper venue may also be raised on appeal. Elmore County Comm’n v. Ragona, 540 So.2d 720, 725 (Ala.1989). See also Ex parte Diamond, 596 So.2d 423, 424 (Ala.1992).
The trial court correctly noted that venue in this case is determined pursuant to § 6-3-2(a)(3), Ala.Code 1975. That section provides:
“(a) In proceedings of a legal nature against individuals:
[[Image here]]
“(3) All other personal actions, if the defendant or one of the defendants has within the state a permanent residence, may be commenced in the county of *888 such residence or in the county in which the act or omission complained of may have been done or may have occurred.”
(Emphasis added.) Because Windom does not reside in Walker County, venue is proper in Mobile County, the county where Windom resides, unless the “act or omission complained of’ occurred in Walker County.
In that connection, Windom contends that “Ivey has not shown and cannot show that Windom originally published any alleged defamatory statement in Walker County.” Petition at 4. He states: “The various quotes attributed to Windom in [the] articles were made by Windom in Mobile or Montgomery Counties — not Walker County.” Id. He contends that the phrases “MOBILE (AP)” and “MONTGOMERY (AP),” appearing before the text of the news reports on which Ivey relies, prove that the news reports in the Eagle were merely reprints of reports by the Associated Press (“AP”) and, consequently, that they were not “originally published” in Walker County. “The only acts or omissions which occurred in Walker County were,” he insists, “the Jasper newspaper’s decisions to republish the stories off of the AP wire. These acts or omissions,” he concludes, “cannot be attributed to [Windom].” Petition at 7. Similarly, citing Ex parte Wilson, 408 So.2d 94 (Ala.1981), he contends that the “mere repetition of a libel ... does not give rise to venue in the county of repetition.” Windom’s Reply to Ivey’s Supplemental Brief and Answer at 5.
The complaint in this action charges Windom with making a variety of defamatory statements. Nowhere on the face of the complaint is there a suggestion that Windom made any of those statements in Walker County. Ivey opposed the motion to transfer the action with evidence indicating that accounts of Windom’s statements were published in Walker County by the local newspaper. We cannot draw from the plain meaning of the statute any basis upon which the conduct of a newspaper in reprinting in Walker County an account of remarks Windom made elsewhere would be relevant in determining venue. Ivey has not sued the local newspaper, nor has he alleged any wrongdoing on the part of the local newspaper. Therefore, “the act ... complained of’ (§ 6-3-2(a)(3)) is the conduct of Windom.
In a slander or libel case, the issue of venue must not be confused with the issue of ultimate responsibility or liability. Liability for slander or libel, like liability for any tort, depends on the continuum of the three essential elements of a tort: the wrongful act by the defendant, the proximate causation, and the damage. The venue statute isolates the first of these three essential elements, the beginning of the continuum — the wrongful act by the defendant — as one of the criteria (the other being the defendant’s residence) for determining venue. In the case before us, the republication of the remarks in Walker County was not the allegedly wrongful act by Windom but was rather a later act on the continuum, the end of the causal chain. The fact that the venue statute isolates the first essential element, the wrongful act by the defendant, as one of the criteria for determining venue in no way contradicts or alters the law as it relates to the tort of defamation, which fixes ultimate liability upon the defendant if all three essential elements are proved.
Ivey relies upon Ex parte Arrington, 599 So.2d 24 (Ala.1992), in which this Court interpreted § 6-3-2(a)(3) in determining venue in actions against individuals. The individual defendant in Ex parte Arrington, a resident of Jefferson County and the then mayor of Birmingham, wrote a newspaper article in Jefferson County *889 that was published in Jefferson County.[1] The action was filed in Shelby County. This Court held that venue was proper in Jefferson County and not Shelby County, where the defendant did not reside. The plaintiff conceded that, under settled precedent, an action against a newspaper published in Jefferson County would not be appropriate in Shelby County, yet he insisted that a different rule should apply to individual authors of newspaper articles as opposed to newspaper publishers.
In Ex parte Arrington, this Court rejected the argument that venue in an action against an individual defendant would be appropriate in every county in which damage had occurred.
“Consequently, we hold that in actions against individuals alleging the publication of libelous matter in a newspaper article, venue lies in the county in which the newspaper was printed.”
599 So.2d at 26 (emphasis added). As previously noted, nowhere in the complaint does Ivey allege that Windom published any article in a newspaper. This was no oversight, because Windom, unlike Arring-ton, was not the author of a newspaper article. Arrington’s conduct consisted of writing an article in Jefferson County for publication in Jefferson County. Windom’s conduct (not the newspaper’s) occurred in Montgomery County, the site of a press conference, and was subsequently reported in Walker County by individuals and entities wholly beyond his control. Ex parte Arrington stands for rigid adherence to the requirement that venue is proper in the county where the act complained of occurred.
Because Arrington happened to be the author of a newspaper article, his medium of publication was the newspaper. We should not extrapolate from Ex parte Arrington a rule that all individuals who make allegedly defamatory remarks that are subsequently repeated in a newspaper may be sued wherever the newspaper is published based on the fortuity in Ex parte Arrington of Arrington’s conduct having occurred in association with a newspaper published in his county of residence. To do so would be to rewrite § 6-3-2(a)(3). Ex parte Arrington stands only for the proposition that an individual who makes an allegedly defamatory statement should be sued where the defamatory remark was made. A proper application of the rule in Ex parte Arrington would deny venue in Shelby County if the evidence showed that Arrington, instead of happening to be an author writing an article for a newspaper in the county of his residence, was a speaker at a rostrum in Jefferson County who uttered allegedly slanderous remarks that either could be overheard just across the county line in Shelby County or were later repeated by a listener on his return to Shelby County. We cannot treat Windom any differently. See Ex parte Wilson, 408 So.2d 94, 96 (Ala.1981) (“[Although the libelous damage may accrue in separate counties, the injury happens in only one county, the county of original publication.”).[2]
*890 Applying the rule in Ex parte Arrington to this case, we conclude that had the action been filed in Montgomery County, the site of the press conference, venue would have been proper because Montgomery County was “the county in which the act or omission complained of may have been done or may have occurred.” § 6 — 3—2(a)(3).
Summarizing, the Legislature has made the site of the act complained of the appropriate venue. That a statement may be made in one county with full knowledge and hope that it will be reprinted in a newspaper in another county may well form a fair and just basis for laying venue in the county where the newspaper republishes the story. However, until the Legislature enacts such a rule, we cannot rewrite the statute to reach that result. Such judicial legislation would violate the separation-of-powers doctrine. See Ivey v. State, supra, 821 So.2d at 946, citing Art. III, §§42 and 43, Ala. Const. of 1901.
Windom, as the prevailing party on a motion to transfer the action for improper venue, is entitled to select the appropriate county to which the action must be transferred when venue is proper in more than one county. Rule 82(d)(3), Ala. R. Civ. P. In his motion to transfer venue, Windom requested that this action be transferred to Mobile County, the county of his residence. This action is due to be transferred to Mobile County.
PETITION GRANTED; WRIT ISSUED.
MOORE, C.J., and HOUSTON, SEE, BROWN, JOHNSTONE, HARWOOD, and STUART, JJ., concur.
WOODALL, J., dissents.

. "The undisputed facts reveal that the newspapers are printed and published in Jefferson County and that Mayor Arrington researched and wrote the article in Jefferson County.” 599 So.2d at 25 n. 2.

. Significantly, in venue cases, the word injury commonly refers not to the damage allegedly suffered by the plaintiff, but to the wrongful act or omission allegedly committed by the defendant; the word injury, as used in these cases, derives from the Latin word injuria, meaning the wrongful act or omission. Ex parte Wiginton, 743 So.2d 1071, 1074 (Ala.1999); Ex parte SouthTrust Bank of Tuscaloosa County, N.A., 619 So.2d 1356, 1358 (Ala.1993); and Age-Herald Publ’g Co. v. Huddle-ston, 207 Ala. 40, 44, 92 So. 193, 197 (1921). Thus, even those venue cases that hold that *890 venue of a personal action lies in the county where the injury occurred commonly mean the county where the defendant committed the alleged wrongdoing. Id.