Facts and Procedural History
At one time, Vulcan Materials Company manufactured and sold perchloroethylene (sometimes referred to as "perc"), a chemical used in the dry-cleaning process. In 1998, two municipal entities in California, the City of Modesto and the City of Modesto Redevelopment Agency, filed separate actions against Vulcan in state court in San Francisco, California, alleging that Vulcan was responsible for groundwater contamination and other property damage in over 50 locations around Modesto, California, caused by perchloroethylene. Those actions were consolidated and are referred to as the "Modesto litigation."
In January 2005, while the Modesto litigation was progressing, Transport Insurance Company ("Transport"), one of the companies that provides Vulcan's insurance, brought an insurance-coverage declaratory-judgment action against Vulcan in state court in Los Angeles, California. Transport sought a judgment declaring that it had no duty to defend or indemnify Vulcan regarding the Modesto litigation. In response to the California state court's request for information in Transport's declaratory-judgment *Page 379 
action, Vulcan represented the following:
 "It is likely that resolution of this insurance coverage case will require detailed knowledge of the underlying Modesto [litigation]. In fact, this insurance case may require factual investigations involving expert testimony about numerous environmental contamination locations."
Vulcan also indicated that Transport's action "involves or is likely to involve . . . coordination with [the Modesto litigation]."
The Modesto litigation was divided into different phases. The first phase, covering just a few of the "more than fifty" allegedly contaminated sites, went to trial. In June 2006, the jury awarded compensatory damages totaling over $3 million against Vulcan and other defendants and awarded punitive damages of $100 million against Vulcan. The court later remitted this punitive-damages award to $7,254,115. The later phases of the Modesto litigation remain pending.
Soon after the verdict was entered in the first phase of the Modesto litigation, two more of Vulcan's insurers, First State Insurance Company ("First State") and Nutmeg Insurance Company ("Nutmeg"), filed a second insurance-coverage declaratory-judgment action ("the First State action"). They, too, sought a judgment declaring whether they had a duty to defend or indemnify Vulcan in the Modesto litigation.
On August 10, 2006, Vulcan brought a third insurance-coverage action relating to the Modesto litigation. Vulcan brought this action in state court in Alabama, the state in which Vulcan has its principal place of business. With one exception, the insurance companies named by Vulcan in its Alabama action all had been named previously as parties to the First State action pending in California. The one exception is the Alabama Insurance Guaranty Association ("AIGA"). AIGA is a "nonprofit unincorporated legal entity" created "to provide a mechanism for the payment of covered claims under certain insurance policies, to avoid excessive delay in payments and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer. . . ." §§ 27-42-6 and 27-42-2, Ala. Code 1975. Under Alabama law, AIGA is deemed to be Vulcan's insurer under policies issued by insolvent insurers. Other than AIGA's role in assisting Vulcan in the event of the insolvency of any of its insurance companies, AIGA has no role in the Modesto litigation.
The same claims are at issue in both the First State action in California and this declaratory-judgment action brought by Vulcan in Alabama. In its Alabama insurance-coverage action, Vulcan seeks a declaratory judgment with respect to the Modesto litigation, but also with respect to an action pending in the Virgin Islands and concerning a site there that is allegedly contaminated by perchloroethylene ("the Virgin Islands litigation"). Vulcan also seeks in this Alabama action declaratory relief with respect to "[a]dditional claims similar to those asserted against Vulcan in the Modesto Litigation and the Virgin Islands Litigation" that "may continue to be asserted against Vulcan in the future." First State and Nutmeg have amended their complaint in the First State action in California to encompass claims against Vulcan involving perchloroethylene "from sites [not only] in the city of Modesto, California, [but also in] the Virgin Islands, and other similar claims and lawsuits related to other sites that have been asserted or may in the future be asserted against Vulcan."
The day after Vulcan filed its Alabama action, it moved to stay or dismiss the First State action pending in California, on *Page 380 
the ground of forum non conveniens. The California court denied Vulcan's motion. As the trial court below noted, "Vulcan did not appeal the California court's ruling, and the time for filing an appeal has expired."
On October 2, 2006, defendants First State, Nutmeg, American Home Assurance Company, Granite State Insurance Company, Lexington Insurance Company, and National Union Fire Insurance Company of Pittsburgh, Pa., jointly moved the trial court in Alabama to dismiss Vulcan's complaint on the basis of forumnon conveniens under Ala. Code 1975, § 6-5-430, or, alternatively, to stay the case. The Alabama trial court dismissed the case as to all defendants on the ground offorum non conveniens.
Vulcan now appeals the Alabama trial court's decision, arguing that the requirements for dismissal were not met and that the principles of comity do not provide a basis upon which this action should be stayed.
 Issue
The issue is whether the trial court erred in granting the defendants' motion to dismiss the case on the ground offorum non conveniens.
 Standard of Review
"The prevailing question of whether a case should be entertained or dismissed `depends largely upon the facts of the particular case and is in the sound discretion of the trial judge.'" Ex parte Auto-Owners Ins. Co.,548 So.2d 1029, 1032 (Ala. 1989) (quoting Restatement (Second) ofConflict of Laws § 84 at 251 (1971)). "Whether to dismiss an action based on the doctrine of forum non conveniens is within the sound discretion of the trial court, and its ruling on that issue will not be reversed absent an abuse of that discretion." Ex parte United Bhd. of Carpenters Joiners of America, AFL-CIO, 688 So.2d 246, 249 (Ala. 1997) (citing Ex parte Preston Hood Chevrolet, Inc.,638 So.2d 842 (Ala. 1994)).
 Analysis
Section 6-5-430, Ala. Code 1975, provides:
 "Whenever, either by common law or the statutes of another state or of the United States, a claim, either upon contract or in tort has arisen outside this state against any person or corporation, such claim may be enforceable in the courts of this state in any county in which jurisdiction of the defendant can be legally obtained in the same manner in which jurisdiction could have been obtained if the claim had arisen in this state; provided, however, the courts of this state shall apply the doctrine of forum non conveniens in determining whether to accept or decline to take jurisdiction of an action based upon such claim originating outside this state; and provided further that, if upon motion of any defendant it is shown that there exists a more appropriate forum outside this state, taking into account the location where the acts giving rise to the action occurred, the convenience of the parties and witnesses, and the interests of justice, the court must dismiss the action without prejudice. . . ."
Under this statute, the trial court "shall apply the doctrine of forum non conveniens" in determining whether to decline or to take jurisdiction of an action that has arisen outside the state so long as the movants demonstrate that the following three conditions are met: (1) the claim upon which the present action is based originated outside Alabama; (2) there is an alternative forum for this claim outside Alabama; and (3) the factors considered in determining the applicability of the doctrine *Page 381 
of forum non conveniens weigh in favor of dismissing the action.
 I. Origination of Vulcan's Cause of Action
A cause of action arises where the "`defendant's wrongful act was done.'" Ex parte Fields, 432 So.2d 1290 (Ala. 1983) (quoting 92 C.J.S. Venue § 80, p. 776). In the present case, the trial court determined that the "alleged wrongful acts . . . are the insurance defendants' alleged failure to defend and indemnify Vulcan in regards to the perc-related litigation primarily in California and also in other jurisdictions outside of Alabama." We do not disagree with the trial court's conclusion that Vulcan's claims in this action arose out of the insurers' alleged failure to defend and indemnify Vulcan in the perc-related litigation.
"The determination of the situs of the claim — either inside or outside the State of Alabama — is a factual determination left to the sound discretion of the trial court."Ex parte Ford Motor Credit Co., 561 So.2d 244, 246
(Ala.Civ.App. 1990).[1] Vulcan argues that the claim upon which the present action is based actually originated within Alabama. Vulcan points out that Alabama is where Vulcan purchased the insurance policies, where Vulcan paid the premiums on the insurance policies, where "the agent or broker through whom the policies were purchased was located," and where Vulcan tendered its claims for coverage.
Vulcan cites Ex parte Employers Insurance of Wausau,590 So.2d 888 (Ala. 1991), as support for its contention that Vulcan's claims in this case arose in Alabama. InWausau, a lawsuit was pending in California regarding insurance coverage of claims against a corporation. Shareholders of the corporation brought an action in an Alabama state court seeking a declaration of coverage. This Court held that the trial court did not err in denying the insurance companies' motion for a dismissal on the basis of forum nonconveniens. Wausau, however, is distinguishable from the present case because in Wausau the coverage claims of the corporation in California and of the corporation's shareholders in Alabama were "independent" and "altogether separate" from each other. 590 So.2d at 892-93. In the present case, the insurance-coverage action brought by Vulcan in Alabama involves nearly identical parties and covers issues identical to the First State action pending in California.
The act giving rise to Vulcan's declaratory-judgment action against the various insurance companies is not the initiation of the contractual relationship between Vulcan and its insurers, which occurred in Alabama; instead, it is the alleged breach of that contractual relationship — the insurance companies' refusal to defend and indemnify Vulcan from "claims asserting property damage allegedly caused [by perc]." There is no dispute that the various perc-related litigation arose outside Alabama, and that litigation is the very litigation over which Vulcan is bringing this action against the companies that insure it. Stickland v. Trion Group, Inc., 463 F.Supp.2d 921, 925 (E.D.Wis. 2006) ("[A] breach of contract occurs where the contract is to be performed."). In Ex *Page 382 parte Kia Motors America, Inc., 881 So.2d 396
(Ala. 2003), Marilyn Jeffreys was killed in an automobile accident that occurred in Jackson County, Florida. Jeffreys's estate sued Kia Motors America, Inc., Emerald Auto Sales, Inc., and others (collectively "Emerald"), in Houston County, Alabama, asserting a product-liability claim, breach of warranty, and negligence. Emerald moved to dismiss the action on the basis of forum non conveniens. The trial court denied the motion, and Emerald petitioned this Court for the writ of mandamus. We granted Emerald's petition, holding that the doctrine of forum non conveniens applied in that case because "the breach-of-warranty claim in the present action is a claim of `damages for injury to the person in the case of consumer goods,' the cause of action for which occurred in Florida. The claim, then accrued in Florida. Accordingly, we [find] it is a `claim [that] has arisen outside this state.'"881 So.2d at 401 (quoting Ala. Code 1975, § 6-5-430). Thus, under the law of Alabama, a breach-of-contract claim, like the claim between Vulcan and its insurance companies, arises where the contract was breached, rather than where the contract was entered into.[2] We conclude that the trial court did not err in determining that the defendants satisfied the first element of forum non conveniens as set forth in § 6-5-430, Ala. Code 1975.
 II. Availability of Alternative Forum for this Action
Section 6-5-430 also requires the existence of an alternative forum for the case before the case can be dismissed on the ground of forum non conveniens. The defendants appear to have satisfied this element as well. There is currently pending in California a declaratory-judgment action — the First State action — involving the same insurance-coverage issues concerning the same perc-related property damage in the same locations as those insurance-coverage issues presented in this case. Moreover, the same parties are involved in both actions, with only one exception. As noted earlier, AIGA, a named defendant in the insurance-coverage action brought by Vulcan in Alabama, *Page 383 
is not a party to the First State action currently pending in California. Vulcan contends that AIGA could not be sued in California because California does not have personal jurisdiction over AIGA; thus, Vulcan claims, the second condition for the application of the doctrine of forum nonconveniens is not met because there is no alternative forum for Vulcan's action against AIGA.
We disagree. AIGA is a "nonprofit unincorporated legal entity" created "to provide a mechanism for the payment of covered claims under certain insurance policies, to avoid excessive delay in payments and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer. . . ." §§ 27-42-6 and 27-42-2, Ala. Code 1975. AIGA has no connection to Vulcan or to the actions pending against Vulcan except to the extent that AIGA is "deemed the insurer under policies issued by certain insolvent insurers" of Vulcan. Even assuming that Vulcan is entitled to sue AIGA, and that AIGA may be sued only in Alabama, AIGA need not be sued at this time or in this action. We agree with the trial court that the "addition of the AIGA in this case is immaterial" and that California is an adequate alternative forum for this action. Thus, we cannot agree that the trial court exceeded its discretion by finding that the second condition for a dismissal based on forum non conveniens was met.
 III. Forum Non Conveniens Factors
In addition to the factors enumerated in § 6-5-430, including "the location where the acts giving rise to the action occurred," "the convenience of the parties and witnesses," and "the interests of justice," the court should also "`consider the location of the evidence and any other relevant matter in order to assess the degree of actual difficulty and hardship that will result to the defendant in litigating the case in the forum chosen by the plaintiff.'"Ex parte General Nutrition Corp., 855 So.2d 475, 479
(Ala. 2003) (quoting Ex parte Preston Hood Chevrolet,Inc., 638 So.2d at 845). Also relevant is
 "the relative ease of access to sources of proof, the location of the evidence, the availability of compulsory process for the attendance of unwilling witnesses, the cost of obtaining the attendance of willing witnesses, the possibility of a view of the premises, if a view would be appropriate to the action, and any other matter in order to assess the degree of actual difficulty and hardship that would result to the defendant in litigating the case in the forum chosen by the plaintiff."
Ex parte Ben-Acadia, Ltd., 566 So.2d 486, 488
(Ala. 1990).
In applying these factors, the trial court noted that "[t]he catalyst of the pending coverage actions is the Modesto Litigation involving alleged contamination of approximately 50 sites in California. . . . Up until August 10, 2006 when Vulcan filed its complaint in this Court, virtually all material facts in this coverage action occurred in California." On the other hand, no perchloroethylene litigation has been commenced in Alabama. In fact, no perchloroethylene contamination has been identified in Alabama. Thus, we agree with the trial court that the acts giving rise to Vulcan's claims in this insurance-coverage action occurred outside Alabama.
California also appears to be a more convenient forum with respect to the evidence at issue in the insurance-coverage dispute. Vulcan itself admitted as much when it stated:
 "It is likely that resolution of this insurance coverage case will require detailed knowledge of the underlying Modesto [litigation]. In fact, this insurance case *Page 384 
may require factual investigations involving expert testimony about numerous environmental contamination locations."
Vulcan indicated that Transport's insurance-coverage action "involves or is likely to involve . . . coordination with [the Modesto litigation]." The witnesses and sites of contamination located in California will also play an important role in determining the obligations of the insurance companies. Whether the various policies apply to the perchloroethylene litigation will depend on how the contamination occurred, why it occurred, and when it occurred — all questions the answers to which will depend on evidence gathered largely from the allegedly contaminated sites in California and elsewhere.
We reiterate that insurance-coverage actions involving substantially the same parties, regarding the same policies, and concerning the same underlying litigation are currently pending in California. By affirming the trial court's order granting the defendants' motion for a dismissal based onforum non conveniens, we are furthering the interests of justice by avoiding a duplicative action in Alabama. Permitting this case to go forward in Alabama, while a case identical in all material respects is pending in California, would unnecessarily and unjustifiably burden the parties and the respective judicial systems.
 Conclusion
Based on the foregoing, we affirm the trial court's order of dismissal.
AFFIRMED.
COBB, C.J., and WOODALL, SMITH, and PARKER, JJ., concur.
[1] In Ford, Paul Kilgore, a Macon County resident, contracted with Carl Hubbard Chevrolet, Inc., a Delaware corporation with its principal place of business in Lee County, Alabama, to purchase an automobile. Kilgore had previously leased an automobile from a dealership in Maryland. Hubbard agreed to accept the equity built up in the Maryland automobile. The dispute between the parties was over the amount of equity, and Kilgore sued, alleging conversion, fraud, and breach of contract.
[2] The author of this opinion dissented in KiaMotors on the ground that although a breach-of-warranty claim relating to an automobile accrues when the breach occurs, it arises where the manufacturer actually warranted that the automobile was fit for its intended purpose. Thus, the dissent reasoned, "[t]he act giving rise to the breach-of-warranty claim against Emerald was Emerald's delivery of an allegedly defective car at its dealership in Houston County, not the accident in Florida. Therefore, [the dissent concluded,] the breach-of-warranty claim against Emerald arose in Houston County, even if it did notaccrue, for purposes of the statute of limitations, until the date of the Florida accident." Kia Motors,881 So.2d at 402-03 (See, J., dissenting).
The author's dissent in Kia Motors is not inconsistent with the Court's reliance here on that opinion for the proposition that a breach-of-contract claim arises where the contract was breached. In the case before us, we are dealing not with a breach-of-warranty claim with respect to a defective product, as was the case in Kia Motors, but with a breach-of-contract claim arising out of the insurance companies' failure to defend Vulcan. Stanfield v.DeStefano, 300 So.2d 712, 713 (Fla.Dist.Ct.App. 1974) ("In the case of an action for breach of warranty, the issue [of venue] is controlled not by the place where the contract . . . was entered into, but rather where the breach took place — that is, where (and when) the goods in alleged breach of the warranty were delivered."). On the other hand, in a breach-of-contract claim alleging failure to perform contractual obligations that arise, the breach is the failure to perform those obligations. Alpha Claude Neon Corp. v.Pennsylvania Distilling Co., 325 Pa. 140, 142, 188 A. 825,826 (1936) (a cause of action "`arises when that is not done which should have been done'").