MAIN, Justice.
Guarantee Insurance Company, Patriot National Insurance Group, Randy Thomas, and Paul Harper (hereinafter referred to collectively as “the insurance-company parties”) are the defendants in an action filed by SafetyNet Youth Systems, LLC, that is pending in the Dallas Circuit Court. The insurance-company parties petition this Court for a writ of mandamus directing the Dallas Circuit Court to vacate its order denying their motion to transfer the action to the Lee Circuit Court and to enter an order granting the motion because, they argue, venue in Dallas County is improper. We grant the petition on the basis that venue is improper in Dallas County, and we issue the writ directing the Dallas Circuit Court to transfer the case to the Lee Circuit Court.

I. Facts and Procedural History

SafetyNet is an Alabama limited-liability company. Its managing member is Lyn-dell Wheatley. Guarantee is a Florida corporation with its principal place of business in Ft. Lauderdale and its registered agent in Alabama in Jefferson County; it is a wholly owned subsidiary of Patriot. Patriot is a Delaware corporation with its principal place of business in Ft. Lauder-dale; it is solely a holding company. Randy Thomas and Paul Harper are insurance agents with Cobbs, Allen & Hall, an insurance-brokerage and risk-management firm in Montgomery (“the brokerage firm”). Thomas resides in Montgomery County; Harper resides in Lee County.
SafetyNet was formed in 2001. It provides housing, treatment, and other services, including residential psychiatric treatment, to disadvantaged, abused, or emotionally disturbed youth. SafetyNet has three facilities — two in Montgomery County and one in Dallas County.[1] In *865 2009, SafetyNet purchased a workers’ compensation and employers’ liability insurance policy issued by Guarantee that covered the period August 25, 2009, to August 25, 2010. The insurance-company parties briefly describe a meeting that took place in Montgomery regarding the issuance of that insurance policy, but the materials before us contain no information as to when that meeting was held. A premium notice from Guarantee contained in the materials before us indicates that SafetyNet renewed that policy for the period August 25, 2010, to August 25, 2011. SafetyNet states that it also had purchased a policy of insurance from Guarantee in 2008; however, it is undisputed that the policies at issue in this case are the two policies covering 2009-2011 (hereinafter referred to as “the subject policies”). SafetyNet describes the subject policies as follows:
“The policies in question were marketed and sold as ‘retro policies’ which, because they offer a retrospective analysis after the policy period, would present the opportunity for SafetyNet to receive a policy refund. Such a refund would occur after a final premium calculation and audit of SafetyNet’s financial records with respect to Workers’ Compensation and Employer’s Liability which was to be conducted subsequent to the expiration of the policy year.”
SafetyNet’s brief, at 1 (reference to an exhibit omitted).
After a dispute over premiums arose, SafetyNet sued the insurance-company parties and several fictitiously named parties in the Dallas Circuit Court on July 31, 2012, alleging breach of contract, fraudulent misrepresentation, fraud in the inducement, fraudulent suppression, negligence and wantonness, “negligent procurement of insurance coverage,” and conversion stemming from SafetyNet’s purchase of the subject policies. Safe-tyNet seeks to have refunded to it premiums it paid that it alleges were excessive.
On September 12, 2012, the insurance-company parties filed a joint motion requesting the transfer of this action to the Lee Circuit Court.[2] Their motion was supported by, among other things, records from the Alabama Secretary of State’s office; the affidavit of Frank Kushler, Patriot’s senior vice president; and the affidavits of Paul Harper and Randy Thomas. The Secretary of State’s records reflect that SafetyNet was formed on January 16, 2001, with a registered office address in Montgomery, and that SafetyNet amended its articles of formation in September 2004 and November 2006. Kushler testified in his affidavit that he oversees operations for both Guarantee and Patriot; that Patriot has neither an office nor a resident agent in Dallas County; and that, although Guarantee is registered to do business in Alabama, it has neither an office nor a registered agent in Dallas County.[3] Harper testified in his affidavit that he never sent e-mails to or received e-mails from any employee of SafetyNet regarding the subject policies, that he did not place any telephone calls to any employee of Safe-tyNet regarding the subject policies, and that the only meeting he had “with someone from SafetyNet regarding the placement or renewal of the [subject policies] referenced in the lawsuit took place at the office of SafetyNet in Montgomery, Alabama.” Thomas testified in his affidavit that any e-mails he sent to any employee *866 of SafetyNet regarding the subject policies were sent from Montgomery and that he did not have any meetings with any employee from SafetyNet concerning the placement or renewal of the subject policies.
SafetyNet filed a response in opposition to the insurance-company parties’ motion to transfer. The response was supported by, among other things, the application for the 2010-2011 policy; the insurance binder for the 2009-2010 policy issued by the brokerage firm dated August 25, 2009; and Wheatley’s affidavit. SafetyNet’s application states its mailing address as “Lyn Wheatley, 80 Mel Bailey Drive, Minter, AL 36761.” The binder states as the insured “SafetyNet Youth Systems, LLC, Attn: Mr. Lyn Wheatley, 80 Mel Bailey Drive, Minter, AL 36761.” In his affidavit, Wheatley testified, in pertinent part, as follows:
“2. SafetyNet Youth Systems, LLC was formed in 2001. At that time Safe-tyNet did not maintain any property or offices but was simply in the ‘formation stages.’ It has been brought to my attention that the Secretary of State website maintains a listing indicating that SafetyNet Youth Systems, LLC has an address of Montgomery, Alabama. While SafetyNet does maintain facilities in Montgomery County, SafetyNet’s principal office in Alabama is located in Minter, Dallas County, Alabama. In 2009 at the time SafetyNet purchased policies and insurance through Guarantee Insurance Company, Patriot National Insurance Group, Randy Thomas and Paul Harper, SafetyNet’s principal office in the state of Alabama was located in Minter, Dallas County, Alabama.
“3. While SafetyNet maintains facilities in counties other than Dallas County, Alabama, SafetyNet’s largest facility and its’ [sic] corporate offices are located in Minter, Dallas County, Alabama. In addition, all administrative staff report to SafetyNet’s Minter, Dallas County, Alabama offices. SafetyNet’s business manager, human resources director and accounts payable clerk all maintain offices at the SafetyNet principal office in Minter, Dallas County, Alabama. Additionally, the address maintained with the Internal Revenue Service as well as the Alabama Department of Industrial Relations and all other Alabama State Agencies is SafetyNet’s corporate office located in Minter, Dallas County, Alabama.”
The insurance-company parties filed a reply to SafetyNet’s response. That reply was supported by, among other things, a second affidavit from Kushler. In his second affidavit, Kushler stated, in pertinent part, as follows:
“3. Patriot and Guarantee do not do business by agent in Dallas County, Alabama, and did not do business by agent in Dallas County at the time of filing of this lawsuit in 2012. Patriot and Guarantee do not currently insure any locations in Dallas County and did not insure any locations in Dallas County at the time of filing of this suit in 2012. Patriot and Guarantee do not have any employees or agents physically present in Dallas County and did not have any employees or agents physically present in Dallas County at the time of filing of this suit in 2012.
“4. The policies previously issued by Guarantee to SafetyNet Youth Systems, LLC (none of which are current) covered two locations in Montgomery County, Alabama and one location in Minter, Alabama. I am unaware of any other policies having been issued by Patriot or Guarantee that covered any location for any other insured in Dallas County.”
The trial court denied the insurance-company parties’ motion for a change of *867 venue. The insurance-company parties then filed what they called a “motion to reconsider,” supporting that motion with the affidavit of Evie Perry, the premium audit market manager for Guarantee and Patriot. The trial court denied the motion to reconsider. The insurance-company parties then filed their petition for a writ of mandamus with this Court; we ordered answer and briefs.

II. Standard of Review

“‘The question of proper venue for an action is determined at the commencement of the action.’ ” Ex parte Pike Fabrication, Inc., 859 So.2d 1089, 1091 (Ala.2002) (quoting Ex parte Pratt, 815 So.2d 532, 534 (Ala.2001)). If venue is improper at the outset, then, upon motion of the defendant, the court must transfer the case to a court where venue is proper. Pike Fabrication, 859 So.2d at 1091. If the defendant’s motion is denied,
“ ‘[t]he proper method for obtaining review of a denial of a motion for a change of venue in a civil action is to petition for the writ of mandamus.’ Ex parte Alabama Great Southern R.R., 788 So.2d 886, 888 (Ala.2000). ‘Mandamus is a drastic and extraordinary writ, to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.’ Ex parte Integon Corp., 672 So.2d 497, 499 (Ala.1995). Moreover, our review is limited to those facts that were before the trial court. Ex parte National Sec. Ins. Co., 727 So.2d 788, 789 (Ala.1998).
“ ‘The burden of proving improper venue is on the party raising the issue and on review of an order transferring or refusing to transfer, a writ of mandamus will not be granted unless there is a clear showing of error on the part of the trial judge.’ Ex parte Finance America Corp., 507 So.2d 458, 460 (Ala.1987). In addition, this Court is bound by the record, and it cannot consider a statement or evidence in a party’s brief that was not before the trial court. Ex parte American Res. Ins. Co., 663 So.2d 932, 936 (Ala.1995).”
Pike Fabrication, 859 So.2d at 1091.
If the insurance-company parties made a prima facie showing that venue in' Dallas County was improper, the burden then shifted to SafetyNet to rebut that showing. Ex parte East Alabama Med. Ctr., 109 So.3d 1114 (Ala.2012).

III. Analysis

The insurance-company parties argue that, under the circumstances of this case, venue is improper in Dallas County. They rely on §§ 6-3-2 and 6-3-7, Ala.Code 1975, the Aabama statutory authorities that define proper venue in this case, and on § 6-3-21.1, Ma.Code 1975, Aabama’s forum non conveniens statute. SafetyNet counters that venue in Dallas County is proper pursuant to the venue statutes because, it contends, its principal place of business is located in Dallas County and the insurance-company parties do business by agent in Dallas County.

A. Section 6-3-2, Ala.Code 1975

We first address whether venue in Dallas County is improper as to Thomas and Harper under § 6-3-2. Section 6-3-2 governs venue of actions against individual defendants. That statute reads, in pertinent part:
“(a) In proceedings of a legal nature against individuals:
[[Image here]]
“(2) A1 actions on contracts, except as may be otherwise provided, must *868 be commenced in the county in which the defendant or one of the defendants resides if such defendant has within the state a permanent residence.
“(3) All other personal actions, if the defendant or one of the defendants has within the state a permanent residence, may be commenced in the county of such residence or in the county in which the act or omission complained of may have been done or may have occurred.”
The- insurance-company parties argue that venue in Dallas County is improper as to Thomas and Harper because Thomas is a resident of Montgomery County and Harper is a resident of Lee County. Thomas submitted an affidavit stating that he resides in Montgomery County; Harper submitted an affidavit stating that he resides in Lee County. SafetyNet submitted no evidence to contradict either affidavit. Because § 6-3-2(a)(2) clearly provides that a breach-of-contract claim against an individual defendant must be brought in a county in which “one of the defendants resides,” venue in Dallas County as to the breach-of-contract claim against Thomas and Harper is improper pursuant to § 6-3-2(a)(2).
An action against an individual defendant may also be brought in the county “in which the act or omission complained of’ occurred if the action is a personal action other than an action on a contract, pursuant to § 6-3-2(a)(3). According to the evidence before the trial court, Harper met with “someone from SafetyNet” in Montgomery County before the subject policies were issued, and Thomas sent any e-mails directed to SafetyNet from Montgomery County. The documents in the materials before us concerning the subject policies indicate that applications, binders, premium notices, and other paperwork were all issued either from the brokerage firm’s office in Montgomery or from Guarantee’s office in Florida. Nevertheless, SafetyNet argues that because the insurance-company parties directed communications to Dallas County, because the subject policies “were to be delivered” in Dallas County,[4] and because the insurance-company parties collected premiums from Dallas County, venue is proper in Dallas County. We disagree.
In Ex parte Sierra Development, Inc., 652 So.2d 251, 253 (Ala.1994), this Court held that “[a] claim alleging fraud or conversion is a ‘personal action’ within the exception stated in” § 6 — 3—2(a)(3). Safe-tyNet’s complaint alleges the following personal-injury claims: fraudulent misrepresentation, fraud in the inducement, fraudulent suppression, negligence and wantonness, “negligent procurement of insurance coverage,” and conversion. Analyzing the issue of proper venue pursuant to § 6-3-2(a)(3) in Ex parte Windom, 840 So.2d 885, 890 (Ala.2002), this Court noted that “the Legislature has made the site of the act complained of the appropriate venue.” The Court further stated:
“Significantly, in venue cases, the word injury commonly refers not to the damage allegedly suffered by the plaintiff, but to the wrongful act or omission allegedly committed by the defendant; the word injury, as used in these cases, derives from the Latin word injuria, meaning the wrongful act or omission. Ex parte Wiginton, 743 So.2d 1071, 1074 (Ala.1999); Ex parte SouthTrust Bank of Tuscaloosa County, N.A., 619 So.2d *869 1356, 1358 (Ala.1993); and Age-Herald Publ’g Co. v. Huddleston, 207 Ala. 40, 44, 92 So. 193, 197 (1921). Thus, even those venue cases that hold that venue of a personal action lies in the county where the injury occurred commonly mean the county where the defendant committed the alleged wrongdoing. Id.”
Windom, 840 So.2d at 889 n. 2. As to SafetyNet’s personal-injury claims against Harper and Thomas, from the evidence before us, Montgomery County is the only Alabama county in which “the act or omission complained of ... may have occurred.” Therefore, venue in Dallas County as to those claims is improper pursuant to § 6-3-2(a)(3).
We conclude that, under § 6-3-2, venue as to SafetyNet’s claims against Thomas and Harper is improper in Dallas County.

B. Section 6-3-7, Ala.Code 1975

We next address whether venue in Dallas County is improper as to Guardian and Patriot under § 6-3-7. Section 6-3-7 governs venue of actions against corporate defendants. That statute reads, in pertinent part:
“(a) All civil actions against corporations may be brought in any of the following counties:
“(1) In the county in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of real property that is the subject of the action is situated; or
[[Image here]]
“(3) In the county in which the plaintiff resided, or if the plaintiff is an entity other than an individual, where the plaintiff had its principal office in this state, at the time of the accrual of the cause of action, if such corporation does business by agent in the county of the plaintiffs residence .... ”
We first consider whether venue under § 6 — 3—7(a)(1) is proper in Dallas County. The analysis used to determine proper venue pursuant to § 6-3-7 is the same as the analysis of proper venue pursuant to § 6-3-2. As to SafetyNet’s allegations of fraud, negligence, wantonness, and conversion, we note that this Court held in Ex parte Pikeville Country Club, 844 So.2d 1186 (Ala.2002), that venue of a personal-injury claim is proper where the defendant committed the alleged wrongful act, not where its effect was felt by the plaintiff.
“ ‘In Age-Herald Publishing Co. v. Huddleston, 207 Ala. 40, 92 So. 193 (1922), a libel action, this Court established that the term “injury” for purposes of § 6-3-7 refers to the urrongful act or omission of the corporate defendant, not to the resulting damage to the plaintiff, and thus determined that venue for such an injury is proper where a wrongful act was committed, not where the damage resulted....’”
844 So.2d at 1188-89 (quoting Ex parte SouthTrust Bank of Tuscaloosa County, N.A., 619 So.2d 1356, 1358 (Ala.1993)). In SouthTrust Bank, which involved fraud allegations, this Court, interpreting an earlier version of § 6-3-7, held that because SouthTrust Bank had made the alleged misrepresentations in Tuscaloosa County, where it had made telephone calls and had sent mail to the plaintiff, the plaintiffs alleged injuries occurred in Tuscaloosa County, not in the county where the plaintiff received those communications. See also Ex parte Thomasville Feed & Seed, Inc., 74 So.3d 940, 943 (Ala.2011) (the phrase “events or omissions giving rise to the claim” refers to the wrongful acts or omissions of the corporate defendant). As to SafetyNet’s personal-injury claims *870 against Guarantee and Pioneer, it is clear that “a substantial part of the events or omissions giving rise to the claim[s]” occurred in Montgomery County, not Dallas County;. venue of those claims is therefore improper in Dallas County pursuant to § 6-3-7(a)(l).
As to SafetyNet’s breach-of-contract claim, SafetyNet maintains that the events or omissions giving rise to the breach-of-contract claim occurred in Dallas County. SafetyNet relies on Vulcan Materials Co. v. Alabama Insurance Guaranty Ass’n, 985 So.2d 376, 382 (Ala.2007), in which this Court stated that, “under the law of Alabama, a breach-of-contract claim, like the claim between [the plaintiff] and its insurance companies, arises where the contract was breached.” SafetyNet then argues:
“SafetyNet’s breach-of-contract claim is based upon [the insurance-company parties’] failure to tender the performance required by the insurance contracts. This failed performance included not performing a proper retroactive audit of SafetyNet’s business records which are located in Dallas County, and failing to tender the contractually required refund of premiums to Safety-Net’s Dallas County corporate office. ‘ “A breach of contract occurs where the contract is to be performed.” ’ Vulcan Materials Co., 985 So.2d at 382 (quoting Strickland v. Trion Group, Inc., 463 F.Supp.2d 921, 925 (E.D.Wis.2006)). [The insurance-company parties] admit here that ‘no employee of Patriot or Guarantee entered Dallas County for the purpose of any audit.’ Petition at pp. 11-12. SafetyNet agrees, and that is a primary basis of its breach-of-contract claim. The performance which [the insurance-company parties] failed to provide was to be tendered in Dallas County, and, therefore, Dallas County is a proper venue under § 6-3-7(a)(1)....”
SafetyNet’s brief, at 23-24 (footnote omitted). SafetyNet’s argument is premised on its contention that the contracts at issue in this case — the subject policies — were breached in Dallas County. We disagree.
Count 1 of SafetyNet’s complaint alleges breach of contract as follows:
“19. As set forth above, [SafetyNet] entered into an insurance contract with Defendant Guarantee Insurance Company. However, Defendant Guarantee Insurance Company and its agents improperly demanded premiums well in excess of those appropriate under the policy. Furthermore, Defendant Guarantee Insurance Company sought premiums in excess of those disclosed at the time of sale and contrary to the representations which formed the basis of the contractual agreement by and between SafetyNet and Guarantee Insurance Company.
“20. Defendant ] Guarantee Insurance Company and its agents and employees have breached the agreement and contract by failing and refusing to abide by the terms and conditions of the policy including those governing the premiums to be charged and the manner by which SafetyNet has [sic] to receive a refund.
“21. [The insurance-company parties] have breached the contract by, among other things, refusing to abide by the appropriate terms of the policy with respect to premium and refusing to appropriately refund premium and otherwise exacting improper premiums in a manner which is unlawful and inconsistent with the policy and disclosures provided to SafetyNet.”
All the acts or omissions alleged by Safe-tyNet in its complaint would have been performed (or not performed) by Guaran *871 tee and Patriot in Montgomery County by agent or in Florida, where the decisions concerning the subject policies that form the basis of SafetyNet’s claim were made. There simply is nothing in connection with Guarantee’s or Patriot’s performance under the subject policies that was performed in Dallas County. SafetyNet references an audit that it says Guarantee should have performed in Dallas County but did not. This “inaction” alone on the part of Guarantee is not sufficient to allow us to conclude that “a substantial part of the events or omissions giving rise to the claim occurred” in Dallas County. § 6-3-7(a)(1) (emphasis added). Therefore, as to SafetyNet’s breach-of-contract claim against Guarantee and Patriot, venue is improper in Dallas County pursuant to § 6-3-7(a)(l).
We next consider whether venue under § 6-3-7(a)(3) is proper in Dallas County. Section 6-3-7(a)(3) requires a two-prong analysis if a plaintiff other than an individual has filed a complaint. Because SafetyNet is a corporate plaintiff, venue in Dallas County would be proper against a corporate defendant only (1) if SafetyNet’s principal place of business was in Dallas County at the time the action accrued and (2) if the corporation sued did business by agent in Dallas County, the county in which SafetyNet claims it “resides” or has its principal place of business. The parties devote considerable attention in their briefs to the issue whether SafetyNet’s principal place of business was in Montgomery County or in Dallas County at the time the cause of action accrued. We need not address that issue, however, because SafetyNet has not proven the second prong of the § 6-3-7(a)(3) analysis.
According to Kushler’s affidavits, neither Guarantee nor Patriot does business by agent in Dallas County. In his second affidavit, Kushler provided more detail concerning the insurance-company parties’ contention that Guarantee and Patriot do not perform any business functions in Dallas County. In addition to stating that neither Guarantee nor Patriot has even had any employees or agents physically present in Dallas County, Kushler stated that Guarantee and Patriot had not issued any policies currently in force covering any location in Dallas County and had not issued any such policies that were in force at the time this case was filed in 2012. Moreover, Kushler testified that other than the subject policies, which covered two locations in Montgomery County and one location in Dallas County from 2009 to 2011, he was not aware of any other policies having been issued by Guarantee or Patriot that covered any other insured in Dallas County. Because Kushler’s affidavits were sufficient to make a prima facie showing that Guarantee and Patriot do not do business in Dallas County, the burden thereby shifted to SafetyNet to prove that Guarantee and Patriot do in fact conduct business by agent in Dallas County. Thomasville Feed & Seed, 74 So.3d at 943 (citing Ex parte Citizens State Bank, 989 So.2d 507, 508 (Ala.2008)).
In its answer in response to the mandamus petition, SafetyNet contends that, because the subject policies provided workers’ compensation insurance covering injuries to SafetyNet employees working in Dallas County, Guarantee and Patriot did business in Dallas County. Relying on the insurance documents in the materials before us, SafetyNet also contends that because the original insurance prospectus was sent to its office in Dallas County, as were the applications, billing notices, and premium statements, and because premiums were collected from Dallas County, Guarantee and Patriot did business by agent in Dallas County.
*872 In Ex parte Elliott, 80 So.3d 908, 912 (Ala.2011), this Court held:
“To establish that a corporation does business in a particular county for purposes of venue, past isolated transactions are inconclusive. Ex parte Harrington Mfg. Co., 414 So.2d 74 (Ala.1982). A corporation does business in a county for purposes of § 6-3-7 if it performs with some regularity in that county some of the business functions for which the corporation was created. Ex parte SouthTrust Bank of Tuscaloosa Cnty., N.A., 619 So.2d 1356, 1358 (Ala.1993).”
(Emphasis added.) This Court has also held that “ ‘ “not every act done within the corporate powers of a foreign corporation will constitute doing business within the meaning of the statute.” ’ ” Ex parte Greenetrack, Inc., 25 So.3d 449, 453 (Ala.2009) (quoting Ex parte Scott Bridge Co., 834 So.2d 79, 81 (Ala.2002), quoting in turn Ex parte Charter Retreat Hosp., Inc., 538 So.2d 787, 790 (Ala.1989)). Considering the evidence before us, we find very little, if anything, to indicate that Guarantee or Patriot did business in Dallas County. The corporate functions they performed with regularity in connection with the subject policies were actions taken in Montgomery or in Florida. Even if Guarantee or Patriot performed some isolated transaction in Dallas County in the past, such a transaction is insufficient to establish that Guarantee or Patriot was doing business in Dallas County for venue purposes. Safe-tyNet has not met its burden to rebut the insurance-company parties’ showing that Guarantee and Patriot did not conduct business by agent in Dallas County. Venue, therefore, is improper in Dallas County as to Guarantee or Patriot pursuant to § 6-3-7(a)(3).
We conclude that, under § 6-3-7, venue as to SafetyNet’s claims against Guarantee and Patriot is improper in Dallas County.

C. Section 6-3-21.1, Ala.Code 1975

The parties devote a substantial portion of their briefs to the argument that both the interest of justice and the convenience of the parties and witnesses dictate the transfer of this case from Dallas County. Section 6-3-21.1, which codifies the doctrine of forum non conveniens, provides when an action must be transferred to another venue pursuant to that doctrine. This Court has held, however, that § 6-3-21.1 “has a field of operation only where an action is commenced in a county in which venue is appropriate.” Ex parte New England Mut. Life Ins. Co., 663 So.2d 952, 956 (Ala.1995) (emphasis added). In Ex parte Miller, Hamilton, Snider & Odom, LLC, 978 So.2d 12, 14 (Ala.2007), this Court stated:
“The doctrine of forum non conve-niens is applicable only ‘[w]ith respect to civil actions filed in an appropriate venue.’ § 6-3-21.1(a) (emphasis added). This statutory language is consistent with ‘the fundamental premise of all transfers for convenience — i.e., that venue is good at the time of filing, but that a transfer to a better venue is, or has become, appropriate.’ Ex parte Wilson, 854 So.2d [1106,] 1112 [(Ala.2002)] (emphasis added).”
Because we conclude that venue is not proper in Dallas County, the doctrine of forum non conveniens does not apply; therefore, we do not address the parties’ arguments as to this issue.

IV. Conclusion

We hold that when SafetyNet commenced this action, venue was improper in Dallas County; therefore, the insurance-company parties have demonstrated a clear legal right to the relief they seek. *873 As the prevailing parties on a motion to transfer the action for improper venue, the insurance-company parties are entitled to select the appropriate county to which the action must be transferred when venue is proper in more than one county. Windom, 840 So.2d at 890; Rule 82(d)(8), Ala. R. Civ. P. Moreover, it is well settled that an action may be brought against a domestic corporation “in a venue otherwise improper as to it, so long as venue is proper as to one or more of its joint defendants.” Ex parte Fontaine Trailer Co., 854 So.2d 71, 84 (Ala.2003). In this case, venue is proper in Lee County as to Harper under § 6-3-2(a)(2) and (3) because Lee County is the county in which Harper resides. In their motion to transfer, the insurance-company parties requested that this action be transferred to Lee County. Therefore, we grant the insurance-company parties’ petition for a writ of mandamus and direct the trial court to vacate its order denying the insurance-company parties’ motion to transfer and to enter a new order transferring SafetyNet’s action to the Lee Circuit Court.
PETITION GRANTED; WRIT ISSUED.
STUART, BOLIN, and WISE, JJ., concur.
BRYAN, J., concurs in the result.
MOORE, C.J., and MURDOCK, J., dissent.

. One of the exhibits in this case, a copy of letterhead bearing the logo "SafetyNet Academy . Villa . Crossings,” refers to a "SafetyNet Academy” with an address in Dallas County and a "SafetyNet-Montgomery Villa & Crossings” with an address in Montgomery County. Another exhibit, a record from the Alabama Secretary of State, shows the incorporation of "SafetyNet YouthCare, Inc.” It is undisputed, however, that the entity involved in this case is SafetyNet Youth Systems, LLC.

. In the alternative, the insurance-company parties sought to have the action transferred to the Montgomery Circuit Court.

. Kushler also testified that Patriot was not an insurance company and took no actions in the matters relating to SafetyNet’s claims.

. We note that although SafetyNet states in its brief to this Court that the subject policies "were to be delivered” in Dallas County, there is no evidence to that effect in the materials before us.